C. P. NASH *et al.* V. THE CITY OF GLEN ELDER.

No. 14,774.   (88 Pac. 62.)

SYLLABUS BY THE COURT.

1. STATUTORY CONSTRUCTION — *Enlarging the Boundaries of a City—Powers of County Commissioners.*   Section 1172 of the General Statutes of 1901, authorizing the county commissioners to make an order enlarging the boundaries of a city of the third class at the request of the city council, if satisfied that it is to the city's interest and will not cause manifest injury to individuals, is to be interpreted, in view of the difference between its phraseology and that of related legislation enacted at the same session, as intended to confer upon the commissioners the legislative power to determine whether such change shall be made.

2. WORDS AND PHRASES—*"Appeal."*   The word "appeal," when used in a statute, does not necessarily imply the removal of a controversy from one tribunal to another to be there tried as a new proceeding, nor has it any absolutely fixed and definite meaning.   It is to be interpreted like other expressions, according to the context and by the aid of the ordinary rules of construction.

3. CONSTITUTIONAL LAW—*Statute Held Not to Confer Legislative Power upon a Judicial Tribunal.*   The section (Gen. Stat. 1901, § 1175) which grants an appeal from an order of the board of commissioners enlarging corporate boundaries, made under the provisions of the section referred to in paragraph 1, is to be construed as authorizing a review only of so much of the action of the board as is judicial in its nature. It is effective at least to the extent of enabling persons aggrieved to carry to the district court the question whether manifest injury would be done to their property by the proposed change, and if an affirmative answer is given to have the order set aside as having been made without authority.

Error from Mitchell district court; RICHARD M. PICKLER, judge.   Opinion filed December 8, 1906.   Reversed.

*Burnham & Dashiell,* for plaintiffs in error.

*Lutz & Jordan,* for defendant in error; *Park B. Pulsifer,* of counsel.

The opinion of the court was delivered by

MASON, J.: This case presents the question of the constitutionality of the section of the statute giving an appeal to the district court from the action of the board of county commissioners in extending the boundaries of a city of the third class. The statute, so far as it bears upon this matter, reads:

"That whenever the city council of any city of the third class desire to enlarge the limits thereof from the territory adjacent thereto, said council shall, in the name of the city, present a petition to the board of commissioners of the county in which said city is situated, setting forth by metes and bounds the territory sought to be so added, and praying that such territory may be added thereto. Upon such petition being presented to said board, with proof that notice as to the time and place said petition shall be so presented has been published for three consecutive weeks in some newspaper published in said city, they shall proceed to hear testimony as to the advisability of making such addition; and upon such hearing, if they shall be satisfied that the adding of such territory to the city will be to its interests and will cause no manifest injury to the persons owning real estate in the territory sought to be added, they shall make an order declaring said territory a part of the corporate limits thereof and subject to the laws and ordinances pertaining thereto." (Gen. Stat. 1901, § 1172.)

"Any person feeling himself aggrieved by the order of such board of county commissioners may appeal from such order to the district court of the county in which said city is located, by filing in the office of the clerk of the district court of said county, within ten days after such order is filed in said clerk's office, a good and sufficient bond, conditioned for the payment of all costs." (Gen. Stat. 1901, § 1175.)

Proceedings were instituted in accordance with these provisions for the purpose of adding certain territory to the city of Glen Elder, and an order was made by the commissioners for such change. C. P. Nash and

F. P. Nash, property owners affected by it, took an appeal from the order to the district court. The appeal was dismissed upon the ground that the section of the statute purporting to authorize it is unconstitutional as an attempt to confer legislative power upon a judicial tribunal. A determination that the boundaries of a city shall be enlarged is an exercise of a legislative function which cannot be imposed upon the district court. (See *Hutchinson v. Leimbach,* 68 Kan. 37, 74 Pac. 598, 63 L. R. A. 630, 104 Am. St. Rep. 384, and cases there cited.) If, therefore, the statute quoted must be interpreted as meaning that the commissioners are to act upon their own judgment, and have a discretion to grant or refuse the petition, and that the appeal referred to brings the entire matter before the district court in the same aspect in which it was presented to them, leaving it to determine for itself as a matter of legislative policy whether the change shall be made, the provision with regard to the appeal is unconstitutional and void as an attempt to devolve legislative powers on the court.

Does the act import that the commissioners have an option to say that the change of boundary shall or shall not be made—that the change shall be made, if at all, by their fiat? Literally read, it is mandatory. It declares that if the commissioners find that the change is beneficial for the city and not harmful to individuals they *shall* make an order to put it in effect. Nevertheless the language seems to suggest the exercise of discretion on their part, and inasmuch as they constitute a body upon which legislative powers may be devolved the statute may be regarded as so far ambiguous in this respect as to justify a resort to external evidence to arrive at its true meaning. An important, and indeed controlling, consideration is derivable from the history of the legislation. In 1885 the legislature passed an act (Laws 1885, ch. 97) relating to the ex-

tension of the limits of cities of the second class, providing for a petition's being presented by the council to the district judge, and for the making of an order by him declaring such change, if satisfied of the existence of certain conditions. In 1886 this act was amended, evidently with the idea that in the original form the power confided to the district judge was legislative. The amended act (Gen. Stat. 1901, §§ 1052-1055) changed the phraseology by requiring the judge to make findings as to the conditions, and in terms left it to the council finally to declare, if the findings were favorable, that the change should be made. At the same session the statute now under examination was passed, being substantially an exact copy of the original act of 1885, except that it related to cities of the third class and substituted the county commissioners for the district judge.

It is but reasonable to suppose that the legislature which saw fit to change the form of the second-class-city act so as to make it plain that the judge to whom was presented a petition for an extension of the corporate limits acted only judicially, and at the same time adopted the discarded language to define the duties of the county commissioners in the case of cities of the third class, had in mind the different capacities of the judge and the commissioners with respect to the possibility of devolving legislative functions upon them, and intended that effect should be given to the different wording of the two statutes then enacted. If it had been the purpose that the commissioners, like the judge, should only find upon the facts, it must be presumed that under the circumstances stated such intention would have been so clearly expressed as to have been free from doubt. We conclude that the commissioners do exercise a legislative power in determining that a change of corporate boundaries shall be made.

It remains to consider the effect of the appeal. The

argument is made that the use of the word "appeal" necessarily implies the setting aside of what has been done by the board and the hearing of the matter by the court *de novo*. The word as a legal term is often, perhaps generally, used in that sense. That may be said to be its technical significance. But in ordinary parlance it has no absolutely fixed and definite meaning, and when employed in a statute it may be construed by the same rules as any other phrase. (I Words & Phrases Jud. Def. 442, 447.)

"The term 'appeal,' as used in the constitution, is a general term denoting not only what are technically denominated appeals, as contradistinguished from a *certiorari* writ of error or petition in error, but any proceeding by which a cause is sought to be removed from probate and justice courts to superior tribunals for the purpose of reexamination." (*Crane v. Giles,* 3 Kan. 54, 55.)

"The term 'appeal' is, in the several states, used in very different senses, and has to a great extent, in statutes and decisions, lost its distinctive meaning, having become a generic term for all forms of rehearing, or else nearly or quite synonymous with 'error' or 'new trial.'" (*Western Cornice & Mfg. Works v. Leavenworth,* 52 Neb. 418, 422, 72 N. W. 592.)

"'Appeals' in reference to actions at law, although expressed by a term originally derived from the civil law, are purely creatures of our statute law, and consequently . . . our various statutes must be construed together in order to determine correctly the import of the term in any given statute. . . . It has then no uniform import as to the mode of trial in our system, whatever may have been its technical import in the civil law, from whence it is derived." (*Carnall v. Crawford County,* 11 Ark. 604, 622.)

An illustration of the use of the term in our statutes in an untechnical sense is to be found in the divorce law (Gen. Stat. 1901, § 5140), where it is employed with obvious reference to a proceeding in error.

The present statute is silent concerning the effect of

the appeal it provides, both with regard to the procedure to be followed and the result to be reached. Much is obviously left to interpretation. The county board in the exercise of its original jurisdiction has at least two questions to determine when a proper petition is presented: (1) Whether the proposed change can be made without manifest injury to the persons owning real estate in the territory sought to be added; (2) if so, whether the annexation shall be ordered. The first determination is judicial; the second legislative. The first may be made reviewable by a court, although the second cannot. We are not to impute to the legislature an intention to disregard the constitution by attempting to give an appeal from a legislative order to a judicial tribunal, if such imputation can be avoided. There is abundant field for the operation of the statute without trenching upon the legislative power of the board. The appeal provided may be deemed as intended to refer to the only part of the action of the board to which it can be made applicable —the judicial part—the determining that no injury would result to landowners by the proposed change. Inasmuch as there is room for the statute to operate without infringing upon the constitution, it will not be held void merely because a literal rendering of its terms might seem to give it a broader operation which would result in such infringement. A similar principle was involved in *Fulkerson v. Comm'rs of Harper Co.,* 31 Kan. 125, 1 Pac. 261, where it was held that, although the statute (Gen. Stat. 1901, § 1640) purports to give an appeal to the district court from "any decision" of the county commissioners, the phrase cannot be interpreted as including a determination reached in the exercise of the board's legislative power.

The appeal taken in the case should not have been dismissed, for it was effective at all events to bring before the district court for review the question whether the change ordered by the board would cause

manifest injury to the appellants, and to empower the court, if it should find that to be the case, to set aside the order attaching territory to the city as having been made without authority.

The judgment is reversed and the cause remanded for further proceedings.

All the Justices concurring.