No. 55,412

PAUL M. DUTOIT, BETTY J. DUTOIT, DUTOIT CONSTRUCTION CO., a Missouri Corporation, and all others similarly situated, *Appellants*, v. THE BOARD OF COUNTY COMMISSIONERS OF JOHNSON COUNTY, KANSAS, sitting and acting as the governing body of Blue River Sewer Sub-District No. 5 and Blue River Main Sewer District No. 1; ROBERT C. BACON, JOHNNA LINGLE, and JEFFREY HILLESON, members of the Board of County Commissioners of Johnson County, and DONALD J. CURRY, County Clerk of Johnson County, Kansas, *Appellees*.

(667 P.2d 879)

Opinion filed July 15, 1983.

*Leonard O. Thomas,* of Weeks, Thomas & Lysaught, Chartered, of Overland

Park, argued the cause, and *David K. Fromme* and *Peggy Grant-Cobb*, of the same firm, were with him on the briefs for the appellants.

*James G. Butler, Jr.*, of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, argued the cause, and *Mark W. McKinzie*, of the same firm, *Terry M. Roehl*, assistant county counselor, and *Lyndus A. Henry*, county counselor, were with him on the brief for the appellees.

*Thomas E. Ruzicka*, of Gardner, Davis, Kreamer, Norton, Hubbard & Ruzicka, Chartered, of Olathe, and *Amelia J. McIntyre*, of Watson, Ess, Marshall & Enggas, of Kansas City, Missouri, were on the *amicus curiae* brief for Robert Q. Sutherland, Agent.

The opinion of the court was delivered by

LOCKETT, J.: Plaintiffs Paul and Betty Dutoit, and Dutoit Construction Company, a Missouri corporation (Dutoits), appeal from the dismissal of their action challenging special assessments against their property in Johnson County, Kansas.

The Blue River Sewer Sub-District No. 5 (Blue River) was created under the provisions of K.S.A. 19-2704 *et seq.* Property owners representing more than 51% of the acreage within the sewer and taxing district petitioned the Board of County Commissioners of Johnson County, Kansas (Board) for the creation of Blue River and the building of main sewers within the district. After the preliminary plans, survey and feasibility studies were made, the Board scheduled a hearing to create the proposed district. Notice of the hearing was mailed to all the property owners within the proposed district more than ten days prior to the hearing. Notice was published once a week for two consecutive weeks in a newspaper having general circulation within the district. The Board held a public hearing on June 26, 1978, at 6:30 p.m. and the resolution creating Blue River was adopted.

The first enlargement of Blue River was made without notice and hearing as provided by statute since 100% of the property owners signed the original petition. The second enlargement was approved by resolution of the Board on July 3, 1979, after notice had been mailed to all of the property owners within the proposed addition to the district. Notice was published once a week for two consecutive weeks in the Olathe Daily News. On July 3, 1979, a resolution was adopted by the Board approving the second enlargement of Blue River. The plaintiffs claim the notice procedures of K.S.A. 19-2704 *et seq.* were not followed in the creation and second enlargement of Blue River. Property

owned by the Dutoits was brought into the sub-district by the second enlargement.

Once construction had been completed and all the costs were ascertained, the Board assessed the property within the district. A hearing was scheduled to allow the property owners an opportunity to challenge their individual assessments. Notice of the hearing was sent, as provided by statute, 14 days prior to the hearing on January 5, 1982. Notice was also published once each week for two consecutive weeks prior to the date of hearing. At the public hearing held on January 5, 1982, the Board, by resolution, approved and adopted the assessments made under the resolution dated December 1, 1981. On January 15, 1982, the resolution was filed.

On January 26, 1982, the Dutoits filed a petition to set aside assessments relative to Blue River. The Dutoits requested the court to enjoin the assessments, enter an order setting aside the enlargement of the sewer district, and exclude plaintiffs' property from the sewer district. On February 24, 1982, defendants filed their answer to the plaintiffs' petition.

June 30, 1982, the first amended petition was filed on behalf of the Dutoits asserting their cause of action both individually and on behalf of a class of persons similarly situated. The first amended petition requested the court to set aside the entire proceedings of the Board relative to the creation of Blue River and the subsequent assessment to the landowners within the sub-district. Leave of the court to allow the plaintiffs to amend their petition was not obtained pursuant to K.S.A. 60-215(a). August 9, 1982, defendants filed a motion to dismiss pursuant to K.S.A. 60-212(b) with a memorandum in support. October 7, 1982, the Dutoits filed a motion for leave to amend and a second amended petition containing an additional allegation of a violation of 42 U.S.C. § 1983 (Supp. V 1981). Defendants filed a subsequent memorandum alleging: (1) The plaintiffs do not have sufficient standing to challenge the actions of the Board with regard to the creation and/or enlargement of Blue River; (2) the claims of the plaintiffs were barred by the statute of limitations and laches; (3) the plaintiffs had failed to properly perfect their appeal by filing a bond pursuant to K.S.A. 19-223; (4) the plaintiffs' cause of action should be dismissed for failure to properly join additional parties; (5) plaintiffs' action could not be main-

tained as a class action; and (6) the plaintiffs failed to state a cause of action under 42 U.S.C. § 1983 (Supp. V 1981).

At the commencement of oral argument upon the defendants' motion to dismiss, the court acknowledged that the first and second amended petitions were on file. The court found that a preliminary hearing had not been held to determine if the plaintiffs should be allowed to amend the original petition. On December 20, 1982, the court dismissed plaintiffs' entire action for failure to state a claim for which relief could be granted. The plaintiffs appeal.

The dismissal in this case was pursuant to K.S.A. 60-212(*b*)(6), failure to state a claim upon which relief can be granted. The case of *Weil & Associates v. Urban Renewal Agency*, 206 Kan. 405, Syl. ¶ 2, 479 P.2d 875 (1971), states the standard for this type of dismissal:

"Disputed issues of fact cannot be resolved or determined on a motion to dismiss for failure of the petition to state a claim upon which relief can be granted. The question for determination is whether in the light most favorable to plaintiff, and with every doubt resolved in his favor, the petition states any valid claim for relief. Dismissal is justified only when the allegations of the petition clearly demonstrate plaintiff does not have a claim."

The court is under a duty to examine the petition to determine whether its allegations state a claim for relief on any possible theory. *Monroe v. Darr*, 214 Kan. 426, 430, 520 P.2d 1197 (1974). It is not necessary to spell out a legal theory of relief so long as an opponent is apprised of the facts that entitle the plaintiff to relief. *Febert v. Upland Mutual Ins. Co.*, 222 Kan. 197, 199, 563 P.2d 467 (1977).

The original petition filed by the plaintiff seeking to enjoin the assessments and set aside the enlargement of the sewer district raises several issues.

The trial court held K.S.A. 19-223 barred the plaintiffs' petition since plaintiffs failed to execute a bond with sufficient security as required by the statute. The statute provides:

"Any person who shall be aggrieved by any decision of the board of commissioners may appeal from the decision of such board to the district court of the same county, by causing a written notice of such appeal to be served on the clerk of such board within thirty days after the making of such decision, and executing a bond to such county with sufficient security, to be approved by the clerk of said board, conditioned for the faithful prosecution of such appeal, and the payment of all costs that shall be adjudged against the appellant."

K.S.A. 19-223 provides the exclusive method by which a district

court may review a judicial or quasi-judicial decision of a board of county commissioners. *Concannon v. Board of Linn County Comm'rs*, 6 Kan. App. 2d 20, 21, 626 P.2d 798, *rev. denied* 229 Kan. 669 (1981). The statute affords jurisdiction only when a board of county commissioners has engaged in judicial or quasi-judicial action. *Gonser v. Board of County Commissioners*, 1 Kan. App. 2d 57, 60, 562 P.2d 102 (1977). The plaintiffs claim the special assessments against their property are not fair, just or equitable, and that the sewer improvements do not benefit their property to the extent of the assessment. Special assessments are charges imposed by a local government upon the owners of property specially benefited by a local public improvement. *Becker v. City of Wichita*, 231 Kan. 322, 324, 644 P.2d 436 (1982). The extent to which property has received special benefits from a public improvement is a question of fact legislative or administrative in nature. *Becker v. City of Wichita*, 231 Kan. 322, Syl. ¶ 2. K.S.A. 19-223 is not applicable when one appeals a legislative-type decision by a board of county commissioners.

The appropriate statutes in this action are K.S.A. 60-907 and K.S.A. 19-2705. K.S.A. 60-907 and its predecessor statute, G.S. 1949, 60-1121, have been the avenue employed in challenging special assessments. See *Schulenberg v. City of Reading*, 196 Kan. 43, 410 P.2d 324 (1966); *Hurley v. Board of County Commissioners*, 188 Kan. 60, 360 P.2d 1110 (1961). K.S.A. 60-907 provides in part:

"(*a*) *Illegal tax, charge or assessment.* Injunctive relief may be granted to enjoin the illegal levy of any tax, charge or assessment, the collection thereof, or any proceeding to enforce the same.

. . . .

"(*d*) *Bond.* Where it is shown to the judge that continued procedure under the illegal acts may render the proceedings moot, the judge may, in his or her discretion grant a temporary injunction without bond being required."

The statute furnishes a remedy when a taxpayer's pocketbook is affected, *Seltmann v. Board of County Commissioners*, 212 Kan. 805, 808, 512 P.2d 334 (1973), and the requirement of a bond is discretionary with the judge. Plaintiffs state a claim upon which relief could be granted in challenging their special assessments pursuant to K.S.A. 60-907.

The time period a party has to challenge a special assessment pursuant to K.S.A. 19-2704 *et seq.* is set forth in K.S.A. 19-2705, which provides in pertinent part:

"No suit to set aside the specific special assessments herein provided for, or to enjoin the making of the same, shall be brought nor any defense to the validity thereof be allowed, after the expiration of thirty (30) days from the time when the amount due on each lot or piece of ground liable for such assessment is ascertained and assessed."

The Board approved assessments January 15, 1982. The plaintiffs filed their action on January 26, 1982. The plaintiffs' claim challenging the special assessments is within the statutory time limitation of K.S.A. 19-2705.

In the original petition the plaintiffs also seek to set aside the July 3, 1979, enlargement of the sewer sub-district, which brought the plaintiffs' property into the district. The plaintiffs allege notice of the enlargement was not given pursuant to K.S.A. 19-2704a, and that the petition requesting enlargement did not properly describe the plaintiffs' assessed property. See K.S.A. 19-2704a. They claim they did not learn of their property's inclusion in the sewer district until December, 1981.

The Board contends (1) K.S.A. 19-223 bars the claims; (2) that the plaintiffs lack standing to challenge the enlargement; and (3) that the doctrine of laches applies. K.S.A. 19-223 is inapplicable because the power to create and enlarge sewer districts involves legislative decisions, not a judicial or quasi-judicial decision over which the statute controls review. See *Schulenberg v. City of Reading,* 196 Kan. at 52.

The defendants note the plaintiffs named the Board of County Commissioners of Johnson County, Kansas, sitting and acting as the governing body of Blue River Sewer Sub-District No. 5, as one of the defendants in the action. They contend the plaintiffs thereby admit the corporate existence of the sewer district. The plaintiffs were only complying with a statutory requirement. K.S.A. 19-105 requires that in all suits by or against a county, the name in which the county shall sue or be sued is the "board of county commissioners of the county of . . . ." The plaintiffs had not admitted the corporate existence of Blue River.

K.S.A. 60-907 does not grant taxpayers the right to question the legality of the corporate existence of political subdivisions or municipal corporations in actions brought to enjoin the levy or collection of taxes. But, the rule is limited to actions attacking the corporate existence of the taxing district which levied the taxes. It has no application when the district created has no attributes of corporate existence and levies no taxes. *Schulenberg,* 196 Kan.

at 51. A sewer district created pursuant to K.S.A. 19-2704 *et seq.* is not granted corporate existence as is a sewer district created pursuant to K.S.A. 19-2788. See *Bishop v. Sewer District No. 1,* 184 Kan. 376, 336 P.2d 815 (1959) (which involved a sewer district established under what is now K.S.A. 19-2788). (The 1983 legislature has repealed K.S.A. 19-2704 to 19-2715e and K.S.A. 19-2787 to 19-27,126 effective July 1, 1983.) Plaintiffs would have standing to challenge the enlargement of the sewer district.

The defendants contend the doctrine of laches bars the plaintiffs' attack against the second enlargement of the sewer district. The doctrine of laches is an equitable device designed by courts to bar stale claims. *Jones v. The Grain Club,* 227 Kan. 148, 153, 605 P.2d 142 (1980). For the doctrine to apply, the delay must have caused disadvantage to the other party. *Clark v. Chipman,* 212 Kan. 259, Syl. ¶ 8, 510 P.2d 1257 (1973). The second enlargement occurred in July, 1979. The plaintiffs filed suit in January, 1982, claiming in their petition they did not learn of their inclusion in the sewer district until December, 1981, and that statutory notice procedures were not followed. Four years have passed since the creation of the original sewer district; the sewer lines have been constructed and installed. Plaintiffs now attempt to assert all the actions taken to create, construct and install the sewer lines are void.

In the case of *Kirsch v. City of Abilene,* 120 Kan. 749, 244 Pac. 1054 (1926), the Supreme Court had an opportunity to apply the doctrine of laches in a case very similar to the one at bar. In this particular case, the City of Abilene had purchased a number of city lots for the construction of a public library, city hall and auditorium. After the property was purchased, and the construction bids had been let, petitioners brought an action to enjoin the construction of the public building. In affirming the trial court's decision to refuse the injunction, the court stated:

"[A]ssuming that the plaintiffs had a right to maintain injunction, we will pass to the interposed defense that the laches of plaintiffs bars the relief which they asked. They are invoking the jurisdiction of equity, and under the maxium that *'he who seeks equity, must do equity,'* they are only entitled to such relief as is equitable and just under the circumstances. *A court will grant such relief where conscience, good faith and reasonable diligence exists, and has been exercised, but where these are lacking the relief will be denied.* (10 R.C.L. 395.) If a party sleeps on his rights or unnecessarily delays action until the rights of others have intervened, or conditions have been changed so that it would be inequitable to enforce the right asserted, relief will be denied on the ground of laches. If the

plaintiff stands by and remains passive while the adverse party incurs risks, enters into obligations and makes large expenditures, so that by reason of the changed conditions disadvantage and great loss will result to the adverse party which might have been avoided if the plaintiff had asserted his claim with reasonable promptitude, there are grounds for declining to grant the relief." 120 Kan. at 751-52. Emphasis supplied.

Plaintiffs' attempt to set aside the second enlargement of the sewer district is barred by the doctrine of laches.

The plaintiffs' original petition seeking to set aside a specific special assessment stated a cause of action upon which relief may be granted. The plaintiffs' amended petitions raise new issues. Two major points arise out of the first amended petition: (1) The plaintiffs attempt to amend their action to a class action, and (2) they challenge the creation of Blue River.

An answer was filed in this action before the plaintiffs attempted to amend their petition. Therefore, leave of the court is needed for the pleading to be amended pursuant to K.S.A. 60-215(a). The statute provides such leave should be freely given when justice so requires. The corresponding federal rule was discussed in 6 Wright & Miller, Federal Practice and Procedure: Civil § 1487 (1971):

"The liberal amendment policy prescribed by Rule 15 (a) does not mean that leave will be granted in all cases. Indeed, the text of the rule makes it clear that permission to amend is not to be given automatically but is allowed only 'when justice so requires.' However, the court may not impose arbitrary restrictions on the availability of amendments or use its discretion in a way that undermines the basic policy of the rule.

"The decided cases reveal that a federal court will balance several factors in deciding whether leave to amend should be granted. The Supreme Court, in its opinion in Foman v. Davis [371 U.S. 178, 9 L.Ed.2d 222, 83 S.Ct. 227 (1962)], enunciated the following general standard, which is to be employed under rule 15 (a) by the district courts:

"If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be 'freely given.' [371 U.S. at 182.]

"Perhaps the most important factor listed by the Court and the most frequent reason for denying leave to amend is that the opposing party will be prejudiced if the movant is permitted to alter his pleading. Conversely, if the court is persuaded that no prejudice will accrue, the amendment should be allowed. Thus,

the facts of each case must be examined to determine if the threat of prejudice is sufficient to justify denying leave to amend. In order to reach a decision on this point, the court will consider the position of both parties and the effect the request will have on them. This entails an inquiry into the hardship to the moving party if leave to amend is denied, the reasons for the moving party failing to include the material to be added in the original pleading, and the injustice resulting to the party opposing the motion should it be granted.

"For example, if the court determines that the proposed amendment would result in defendant being put to added expense and the burden of a more complicated and lengthy trial or that the issues raised by the amendment are remote from the other issues in the case and might confuse or mislead the jury, leave to amend may well be denied. How much additional expense or confusion will result in a denial cannot be quantified but must depend on the facts of the particular action." pp. 427-30.

In this case the amendment would drastically alter the nature of the action. The amended petition alleges approximately 200 landowners would be included in the class. The defendants will be prejudiced if the amendment to a class action is permitted. They will have to defend 200 assessments instead of two. The plaintiffs do not show any reason why class action claims could not have been filed in the original petition, and over five months passed from the filing of the original action until the filing of the first amended petition containing class action claims. Weighing the circumstances, the class action claims were properly dismissed. Future efforts to amend a nonclass action to a class action will depend upon the specific circumstances of the case.

The plaintiffs' challenge to the creation of Blue River was also properly dismissed by the trial court. The plaintiffs' property was not included in the sub-district as it was originally constituted. They lack standing to challenge the creation of the sewer sub-district. Standing to sue means that a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy. *Sierra Club v. Morton*, 405 U.S. 727, 731-32, 31 L.Ed.2d 636, 92 S.Ct. 1361 (1972). K.S.A. 60-907 provides for injunctive relief from illegal assessments, but the party filing an action pursuant to the statute generally must be the one against whom an illegal assessment is being levied. The original sewer sub-district did not include the plaintiffs' property. The plaintiffs cannot challenge the creation of the sub-district because they were not sufficiently affected by the creation. No assessment could have been levied against them by the original sewer sub-district.

The United States Supreme Court has held § 1983 protects property rights as well as personal rights. The statute provides a forum for redress for the wrongful deprivation of property by persons acting under color of state law. *Lynch v. Household Finance Corp.,* 405 U.S. 538, 552, 31 L.Ed.2d 424, 92 S.Ct. 1113, *reh. denied* 406 U.S. 911 (1972). Justice Stewart wrote in that case:

"Such difficulties indicate that the dichotomy between personal liberties and property rights is a false one. Property does not have rights. People have rights. The right to enjoy property without unlawful deprivation, no less than the right to speak or the right to travel, is in truth a 'personal' right, whether the 'property' in question be a welfare check, a home, or a savings account. In fact, a fundamental interdependence exists between the personal right to liberty and the personal right in property. Neither could have meaning without the other. That rights in property are basic civil rights has long been recognized. J. Locke, Of Civil Government 82-85 (1924); J. Adams, A Defence of the Constitutions of Government of the United States of America, in F. Coker, Democracy, Liberty, and Property 121-132 (1942); 1 W. Blackstone, Commentaries *138-140. Congress recognized these rights in 1871 when it enacted the predecessor of §§ 1983 and 1343(3). We do no more than reaffirm the judgment of Congress today."

In *Norwood v. Baker,* 172 U.S. 269, 279, 43 L.Ed. 443, 19 S.Ct. 187 (1898), the Supreme Court stated:

"In our judgment, the exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, *to the extent of such excess,* a taking, under the guise of taxation, of private property for public use without compensation. We say 'substantial excess,' because exact equality of taxation is not always attainable."

This court has held mathematical precision is not required when balancing the assessment and the benefit. *Becker v. City of Wichita,* 231 Kan. at 325.

In the plaintiffs' second amended petition they assert claims pursuant to 42 U.S.C. § 1983 (Supp. V 1981). The statute provides in part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

The plaintiffs allege the Board; under color of state law, took the plaintiffs' property without due process or just compensation. The plaintiffs' claims under the federal statute do state claims

upon which relief may be granted. See *Shouse v. Pierce County,* 559 F.2d 1142 (9th Cir. 1977). This amendment is permitted under the liberal standard set by K.S.A. 60-215(*a*). The defendants are not greatly prejudiced by the amendment because the claim arises from the same conduct of the defendants which formed the basis of the original petition. The action will be much the same whether or not the amendment is allowed.

The defendants contend the thirty-day limitation of K.S.A. 19-2705 applies to the 42 U.S.C. § 1983 (Supp. V 1981) claims. In a § 1983 action, generally the limitation period of the state action most similar to the facts of the particular § 1983 action should be utilized. Justice Holmes wrote in *Miller v. City of Overland Park,* 231 Kan. 557, 559-60, 646 P.2d 1114 (1982):

"There is no congressionally mandated statute of limitations for § 1983 actions. Federal courts are instructed to look to state law to determine such limitations. *Board of Regents v. Tomanio,* 446 U.S. 478, 64 L.Ed.2d 440, 100 S.Ct. 1790 (1980). In fact, 42 U.S.C. § 1988 mandates that federal courts apply the law of the state in a § 1983 action 'so far as the same is not inconsistent with the Constitution and laws of the United States.' Although the federal courts in civil rights actions apply the state period of limitations for the most analogous cause of action consistent with the facts asserted to support the civil rights claim, *Johnson v. Railway Express Agency,* 421 U.S. 454, 462, 44 L.Ed.2d 295, 95 S.Ct. 1716 (1975), *Zuniga v. AMFAC Foods, Inc.,* 580 F.2d 380 (10th Cir. 1978), there is no bar to a state Supreme Court interpreting or construing any of its own limitations statutes as specifically applying to particular § 1983 actions, without resort to analogy."

In *Shouse v. Pierce County,* 559 F.2d 1142, a § 1983 action was filed to challenge the constitutional validity of the formation of a utility district. A Washington statute contained a thirty-day limitation period during which the creation of the utility district could be challenged. The Ninth Circuit Court of Appeals rejected the thirty-day limitation period stating:

"When we select the state statute from the available candidates, we try to choose that statute which applies to those state actions that resemble our Section 1983 action and that are sufficiently generous in the time periods to preserve the remedial spirit of federal civil rights actions." 559 F.2d at 1146.

See *Childers v. Ind. Sch. Dist. No. 1 of Bryan County,* 676 F.2d 1338, 1342-43 (10th Cir. 1982).

The suit contemplated in K.S.A. 19-2705 is different than an action pursuant to 42 U.S.C. § 1983 (Supp. V 1981). An action under 19-2705 to set aside assessments will not support a claim for money damages. In establishing a thirty-day limitation period

the legislature seeks to have financing for sewer projects final-
ized as swiftly as possible. A § 1983 action would not delay
financing arrangements and could be filed at a later time. A
thirty-day limitation period is not sufficiently generous to pre-
serve the remedial spirit of 42 U.S.C. § 1983 (Supp. V 1981).

K.S.A. 60-513(*a*) has sometimes been utilized as the statute of
limitations in § 1983 actions. See *Miller v. City of Overland
Park,* 231 Kan. at 561. The statute provides in pertinent part:

"The following actions shall be brought within two (2) years:

. . . .

"(4) An action for injury to the rights of another, not arising on contract, and not
herein enumerated."

The statute is applicable in this case, and the action accrued
when the assessments were made January 15, 1982. The plain-
tiffs' § 1983 action has been timely filed.

The Dutoits allege when Blue River was created, the Board
estimated the cost for construction of the main lines for the sewer
system would be approximately 1.1 million dollars, but the final
project cost was closer to 3.8 million dollars. The assessment
against the Dutoits' property totaled $52,953.58 for the main
lines of the sewer project. Still remaining to complete the sewer
system is the construction of the sewer plant and the individual
landowners' connections to the system, which cost will also be
taxed against the individual landowners.

The issues raised in this case involve the power of the Board to
act. The wisdom of the defendant Board's utilization of its power
is not a legitimate subject for judicial review. We can understand
the landowners' concern over the major escalation in their tax
burden arising from the construction of the sewage system.
Dutoits do have a right under § 1983 to protect their property
rights. The statute provides relief to the landowner if the Board
acting under the color of the law wrongfully deprived them of
their property.

The dismissal of the class action claims and the claims chal-
lenging the creation and enlargement of the Blue River Sub-
District No. 5 is affirmed. The dismissal of plaintiffs' claim
contesting their assessments and their 42 U.S.C. § 1983 (Supp. V
1981) claim is reversed. These claims are remanded to the trial
court for further proceedings consistent with this opinion.

HOLMES, J., dissenting.