No. 65,945

KEEN A. UMBEHR, d/b/a SOLID WASTE SYSTEMS, *Appellant,* v. BOARD OF COUNTY COMMISSIONERS OF WABAUNSEE COUNTY, KANSAS, *Appellee.*

(843 P.2d 176)

Opinion filed December 11, 1992.

*Brenda J. Bell*, of Everett, Seaton, Miller & Bell, of Manhattan, argued the cause and was on the briefs for appellant.

*William L. Frost*, of Morrison; Frost and Olsen, of Manhattan, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Keen A. Umbehr appealed the dismissal of his petition for declaratory judgment and injunctive relief which contested the Board of Wabaunsée County Commissioners' (Board) increase of county landfill user rates. The district court held that, although the Board's legislative action increasing the rates was unreasonable, Umbehr failed to timely perfect his appeal and dismissed his action. The Court of Appeals found that the time limitations of K.S.A. 19-223 did not apply and reversed and remanded for further hearing. We granted the Board's petition for review.

Keen A. Umbehr, a trash hauler, provides residential trash pickup service for six towns and hauls solid waste for a number of commercial customers in Wabaunsee County. Umbehr hauls approximately 90% of the commercial trash to the Wabaunsee County landfill. Since 1986 Umbehr's contract with the Board has allowed him to dump trash at the prevailing rate for 600 yards regardless of the amount actually dumped.

On March 29, 1990, because of environmental requirements, the Board voted to increase the rates for pickups with sideboards and two-wheel trailers with sideboards from $3 to $4. The rate for dump trucks and compactor trucks was increased from $2 per yard to $4 per yard. The rate for cars, pickups, and pickups with two-wheel trailers was not increased. Twenty-five percent of the fees from the dump trucks and compactor trucks were to be used to pay for expenses previously paid from the general fund and for future expenses.

Under the new schedule, Umbehr's cost would increase from $1,200 per month to $2,400 per month. It would take Umbehr 60 to 120 days to obtain an approval for an increase in residential rates from each of the towns he serves. The new rates were to be effective June 1, 1990.

Umbehr appealed the Board's decision on May 16, 1990. On June 1, 1990, 63 days after the Board's decision, Umbehr filed a petition for declaratory judgment and an application for a restraining order. On August 8, 1990, the district judge in a memorandum decision held the Board's actions were legislative in nature. The judge found that the reasonableness of the Board's action in adopting the new rate could be challenged in a declaratory judgment action and granted a temporary injunction until the court determined the reasonableness of the Board's rate increase.

Later, in a supplemental memorandum decision, the district judge found that the Board's decision to increase the rates was unreasonable and arbitrary. Subsequently, the district judge dismissed Umbehr's action because Umbehr had failed to timely file an appeal of the Board's action within 30 days as required by K.S.A. 19-223. That statute states:

"Any person who shall be aggrieved by any decision of the board of commissioners may appeal from the decision of such board to the district court of the same county, by causing a written notice of such appeal to be served on the clerk of such board within thirty days after the making of such decision."

Umbehr appealed the dismissal of his action.

All parties and the district court agreed that the actions of the Board were legislative. On appeal, Umbehr argued that the provisions of K.S.A. 19-223 apply only to appeals from judicial or quasi-judicial actions of a board, not legislative actions such as an increase in landfill user rates. The Court of Appeals agreed the limitations of K.S.A. 19-223 did not apply, citing *Dutoit v. Board of Johnson County Comm'rs*, 233 Kan. 995, 998-99, 667 P.2d 879 (1983).

While reviewing the statutes and cases cited by the parties, the Court of Appeals observed that because there was no statutory provision authorizing review of the Board action, both parties relied upon *Brinson v. School District*, 223 Kan. 465, 576 P.2d 602 (1978). The Court of Appeals noted that *Brinson* states that in the absence of a statutory provision for appellate review of an administrative decision, no appeal is available, but relief from illegal, arbitrary, and unreasonable acts of public officials and boards can be obtained by using such equitable remedies as quo

warranto, mandamus, or injunction. 223 Kan. at 467. The Court of Appeals concluded that because no statutory provision existed for an appeal from a legislative action by the Board, the district court had equitable jurisdiction to consider whether the Board's legislative action increasing the landfill user rate was unlawful, arbitrary, and unreasonable. The Court of Appeals reversed the district court's finding that the 30-day limitation of K.S.A. 19-223 did not apply, holding that the plaintiff's action was not time barred, and remanded the action for further hearing.

The Board argues to this court that even if the district court had jurisdiction to review its legislative act, its jurisdiction was limited to determining whether the Board had authority to raise the landfill user rates and it could not consider the reasonableness of the rates set by the Board. The Board relies on *Cedar Creek Properties, Inc. v. Board of Johnson County Comm'rs*, 249 Kan. 149, 815 P.2d 492 (1991), and *State, ex rel., v. Unified School District*, 218 Kan. 47, 542 P.2d 664 (1975).

Some actions taken by public agencies and boards are legislative or administrative while others are judicial or quasi-judicial. Legislative power is the power to make, alter, or repeal laws or rules for the future. An action by an agency or board that looks to the future and changes existing conditions by making a new rule to be applied thereafter is legislative or administrative. An action by an agency or board that declares and enforces liabilities as they stand on present or past facts and under existing law is either judicial or quasi-judicial. See *Stephens v. Unified School District*, 218 Kan. 220, 546 P.2d 197 (1975). The power or function which pertains more to administrative than to judicial, yet partakes of the judicial, is referred to as "quasi-judicial". See *Golden v. City of Overland Park*, 224 Kan. 591, 597, 584 P.2d 130 (1978).

Power to create municipal corporations, the annexation of land by a city, the assessment of property for improvements, and the setting of rates for use of a landfill are examples of legislative acts. The scope of judicial review of these legislative acts is usually dependent upon a statute authorizing an appeal.

In *Nash v. Glen Elder*, 74 Kan. 756, 88 Pac. 62 (1906), we recognized courts have the statutory power to review judicial acts of a county board. In *Nash*, G.S. 1901, § 1172 authorized the

Board of County Commissioners to enlarge the boundaries of a city of the third class at the request of the city council, if satisfied that it was in the city's interest and would not cause manifest injury to individuals. G.S. 1901, § 1175 allowed any person aggrieved by the order of the board to appeal to the district court.

Aggrieved property owners then brought an action in the district court. The district court observed that a determination that the boundaries of a city should be enlarged was a legislative function and could not be reviewed by the court. The *Nash* court determined that the board in the exercise of its original jurisdiction has at least two questions to determine when a proper petition is presented: (1) whether the proposed change can be made without manifest injury to the persons owning real estate in the territory sought to be added; and (2) if so, whether the annexation shall be ordered. The first determination is judicial, the second legislative. The court held that under the statutes, the first determination may be made reviewable by a court, although the second cannot. 74 Kan. at 761.

In *City of Wichita v. Board of Sedgwick County Comm'rs*, 232 Kan. 149, 652 P.2d 717 (1982), the Board of County Commissioners (Board) ordered incorporation of a third class city known as the City of Bel Aire. The incorporation was opposed by the City of Wichita and others. On appeal to the district court, the order of the Board was reversed.

On appeal to the Supreme Court, this court first noted that the scope of judicial review is dependent upon the statutes authorizing the appeal, and the consideration of the legislative function of the Board in granting or denying incorporation of a city is extremely narrow. Among the statutes authorizing incorporation is K.S.A. 15-126, which allowed any person having an interest in and aggrieved by the decision of the board of county commissioners under the provisions of K.S.A. 15-115 *et seq.* to appeal to the district court as provided for by K.S.A. 19-223. The district court had jurisdiction to affirm or, if the court found that the decision of the board was "arbitrary, unlawful, or capricious," to reverse the decision or direct the county commissioners to take proper action. 232 Kan. at 150.

In *City of Wichita*, we observed that K.S.A. 15-123 directs that incorporation shall be denied if certain conditions are found

to exist, but lacking such a determination, the advisability of incorporation is left to the legislative wisdom of the Board. Finally, we noted the fact that the City of Wichita submitted evidence which the trial court felt was substantial, convincing, and compelling in favor of annexation by Wichita is not the test. The board, in an incorporation proceeding, is not bound by the weight of the evidence and, in fact, may grant or deny incorporation even though the evidence favors a contrary result. We concluded it is presumed that public officials act faithfully and properly in the discharge of their functions and reversed the district court.

In *Dutoit v. Board of Johnson County Comm'rs*, 233 Kan. 995, landowners filed a petition to set aside assessments to the land for the cost of a sewer district. Defendants made various allegations, including that: (1) plaintiffs did not have sufficient standing to challenge the action; (2) plaintiffs' claims were barred by the statute of limitations and laches; and (3) plaintiffs had failed to properly perfect their appeal.

The *Dutoit* court pointed out that the extent to which property has received a sufficient benefit from a public improvement is a question of fact, legislative or administrative in nature, citing *Becker v. City of Wichita*, 231 Kan. 322, Syl. ¶ 2, 644 P.2d 436 (1982). We noted the 30 days a party has to challenge a special assessment under K.S.A. 19-2705 (Ensley 1981) had expired and observed that even if the 30-day limitation of 19-2705 did not apply, the doctrine of laches was applicable because the plaintiffs had failed to assert a prompt claim. The *Dutoit* court recognized that property rights as well as personal rights are protected by 42 U.S.C. § 1983 (Supp. V 1981), which provides a forum for redress for wrongful deprivation of property by persons acting under color of state law. See *Lynch v. Household Finance Corp.*, 405 U.S. 538, 552, 31 L. Ed. 2d 424, 92 S. Ct. 1113, *reh. denied* 406 U.S. 911 (1972). The *Dutoit* court concluded that even though the State action was time barred, the federal action was timely.

In each of the cases discussed there was a specific statute which allowed the legislative act of a board to be challenged. Here, as in *Brinson*, there was no such statute. Was the Court of Appeals' reliance on *Brinson* correct?

In *Brinson*, 223 Kan. 465, a teacher employed in a school system was terminated by the school board. She filed a grievance.

The board, after holding a grievance hearing, refused to reinstate the teacher, determining her contract had been terminated by mutual assent of the teacher and the board. Pursuant to K.S.A. 60-2101(a) (now K.S.A. 1991 Supp. 60-2101[d]), the teacher appealed to the district court which heard the matter de novo. The district court refused to reinstate the teacher but held she had been improperly terminated and ordered the district to pay her a year's salary. On appeal, the Court of Appeals reversed the judgment of the district court, holding the district court, exceeded the scope of review authorized by the statute when it heard the matter de novo. We accepted the petition for review.

In affirming the Court of Appeals, the *Brinson* court reviewed the right to an appeal in this state. The court noted that it was reviewing a judicial act of the board in determining whether to retain the teacher. The *Brinson* court noted that in the absence of a statutory provision for appellate review of an administrative decision, no appeal is available. It pointed out that even if no statutory right to an appeal exists, relief from *illegal, arbitrary, and unreasonable* acts of public officials and boards can be obtained by using such equitable remedies as quo warranto, mandamus, or injunction, citing *State, ex rel., v. Unified School District*, 218 Kan. at 50. See *Brinson*, 223 Kan. at 467. That statement is incorrect. The correct statement is:

" 'However, the courts are always open to hear meritorious complaints against illegal or oppressive acts of non-judicial public boards and officials, either at the instance of the state or of a private citizen especially aggrieved thereby; but not by appeal where no statute confers a right of appeal. In the absence of a statutory right of appeal, judicial redress for *illegal, fraudulent or oppressive* official conduct must be invoked through some appropriate extraordinary legal remedy recognized in our practice—injunction, mandamus or quo warranto. (*In re Chicago, R.I. & P. Rly Co.*, [140 Kan. 465, 468, 37 P.2d 7]; *State, ex rel. v. Davis*, 144 Kan. 708, 710, 62 P.2d 893.)' " (Emphasis added.) *State, ex rel., v. Unified School District,* 218 Kan. at 50 (quoting *City of Kansas City v. Jones & Laughlin Steel Corp.*, 187 Kan. 701, 703, 360 P.2d 29 [1961]).

There is a vast difference between "illegal, arbitrary, and unreasonable" and "illegal, fraudulent, or oppressive."

It is generally held that a finding of illegality with regard to administrative proceedings relates to the procedural aspects of the proceedings and the determination of whether the action

taken was within the authority of the agency or board. *City of Wichita v. Board of Sedgwick County Comm'rs*, 232 Kan. at 151. A fraudulent act in general is comprised of anything calculated to deceive, including all acts, omissions, and concealments involving a breach of legal or equitable duty, trust, or confidence justly reposed, resulting in damage to another. *Newell v. Krause*, 239 Kan. 550, Syl. ¶ 3, 722 P.2d 530 (1986). A board or agency's act is oppressive when it subjects a person to cruel or unusual hardship through misuse or abuse of authority or power or when it deprives a person of any rights, privileges, or immunities secured by our Constitution or laws. The inaccurate statement by the *Brinson* court improperly enlarged the court's power to review legislative acts of agencies and boards by allowing courts, without statutory authority, to determine whether the administrative body acted reasonably when performing a legislative act.

When a case is decided by the Supreme Court, the justice delivering the opinion is required at the time the decision is made to file with the Clerk of the Appellate Courts a brief statement in writing of the points decided in the case. These points constitute the syllabus in the published report of the case. K.S.A. 20-111. Syllabus paragraphs usually fall into two categories—they are either a general statement of the law or a brief statement of a point decided in the case. If a syllabus paragraph is a statement of a point decided in the case, each time the syllabus paragraph is subsequently applied, there must be careful scrutiny to ensure the facts and the circumstances have not changed so that the statement has become an unsound statement of the law.

The right to an appeal in this state is neither a vested nor constitutional right, but is strictly statutory in nature. It may be limited by the legislature to any class or classes of cases, or in any manner, or it may be withdrawn completely. It lies within the legislative domain to determine from what orders or judgments an appeal may be taken. No agency or board is the final arbiter; if the board acts beyond its authority, hence "illegally," it is subject to challenge through a proper action. *State, ex rel., v. Unified School District*, 218 Kan. at 50. Where no statute confers a right of appeal, courts can hear meritorious complaints against illegal or oppressive acts of nonjudicial public boards and

officials, either at the instance of the State or of a private citizen especially aggrieved thereby.

Appellate review of the legislative action of an agency or board brings the judicial process into conflict with the administrative process. Courts have no appellate jurisdiction over the official acts of administrative officials or boards except when the legislature has made some statutory provision for judicial review. In this case, where there is no statutory right to appeal the legislative act of the Board, judicial redress is limited to actions challenging illegal, fraudulent, or oppressive official conduct. Because there is no claim here of illegal, fraudulent, or oppressive official conduct, the extraordinary equitable remedies of injunction, mandamus, or quo warranto could not be used to judicially review the Board's decision to raise the rate for use of the landfill.

Syllabus ¶ 3 of *Brinson* and the corresponding portion of that opinion are hereby disapproved.

The decision of the Court of Appeals is reversed. The judgment of the district court, although based on an erroneous reason, is nevertheless correct and is affirmed for a different reason.