NOT DESIGNATED FOR PUBLICATION

No. 126,271[1]

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CVR ENERGY, INC.,
*Appellant*,

v.

NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA., et al.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Montgomery District Court; F. WILLIAM CULLINS, judge. Oral argument held April 10, 2024. Opinion filed July 19, 2024. Affirmed.

*Carrie E. Josserand* and *Michael J. Abrams*, of Lathrop GPM LLP, of Kansas City, Missouri, for appellant.

*Brett Solberg*, pro hac vice, of DLA Piper LLP (US), of Houston, Texas, and *Michael J. Kuckelman* and *Jennifer H. Salva*, of Kuckelman Torline Kirkland, LLC, of Overland Park, and *David B. Winter*, pro hac vice, of Zelle LLP, of Dallas, Texas, and *Shari L. Klevens*, pro hac vice, and *Alanna Clair*, pro hac vice, of Dentons US LLP, of Washington, D.C., and *Megan M. Carroll* and *Jason R. Scheiderer*, of the same firm, of Kansas City, Missouri, for appellees.

Before CLINE, P.J., ATCHESON and PICKERING, JJ.

---

[1]**REPORTER'S NOTE**: The names of some of the out-of-state lawyers appearing on the briefs for the parties have been omitted from the appearances because the lawyers have not been admitted pro hac vice under Kansas Supreme Court Rule 1.10.

PER CURIAM:  Several months before the COVID-19 pandemic swept the world, CVR Energy, Inc., purchased multiple insurances policies covering its facilities, including a refinery in Coffeyville, and later sought coverage for losses it attributed to the virus. The companies issuing the policies denied the claims, and CVR Energy sued in Montgomery County District Court for a declaratory judgment and for breach of contract. The district court granted judgment for the insurance companies under K.S.A. 60-212(b)(6) because CVR Energy failed to state a claim for coverage as a matter of law. CVR Energy has appealed. We affirm the judgment, although we rely on narrower grounds than did the district court.

CVR Energy is headquartered in Texas and owns and operates refineries and fertilizer product plants in several states, including Kansas. In December 2019, the company purchased what the parties refer to as all-risk insurance policies from National Union Fire Insurance Company of Pittsburgh; Allianz Global Risks US Insurance Company; XL Insurance America, Inc.; Liberty Mutual Insurance Company; Westport Insurance Corporation; Zurich American Insurance Company; and ACE American Insurance Company. The term "all-risk" is something of a misnomer since the policies exclude or limit coverage for various perils and losses—hence the legal dispute before us. In this case, the insurance companies are united in interest as defendants and have common legal representation. We, therefore, need not and do not otherwise distinguish among them.

The parties agree the relevant language in each of the policies is legally equivalent, so both sides have presented points and arguments common to all of the policies. We have no reason to look behind that agreement and premise our review on the Allianz policy the parties have treated as an exemplar. The parties likewise agree that the substantive law of Texas governs their dispute. Again, we have no reason to say otherwise, especially since the Allianz policy has a choice-of-law clause mandating Texas law.

The polices provided coverage for one year. CVR Energy submitted claims beginning in April 2020, and the insurance companies denied them later in the year. CVR Energy filed this action in March 2022.

CVR Energy filed a 30-page petition with detailed representations about how the COVID-19 virus attaches to surfaces and spreads through the air. The Coffeyville refinery and other company facilities were deemed necessary operations and remained open despite the pandemic. As alleged in the petition, CVR Energy made some modifications to those facilities to inhibit the spread of the virus, but many employees contracted COVID-19 either there or elsewhere and missed work. The petition describes alleged financial losses attributable to CVR Energy doing less business with its customers because they had been adversely affected by the pandemic. Those representations form the factual core for the coverage dispute.

The petition was not the "short and plain statement" showing the plaintiff to be "entitled to relief" contemplated in K.S.A. 60-208(a), governing opening pleadings. We presume CVR Energy made a tactical decision to file a lengthy, fact-laden petition to expeditiously set the stage for a ruling on coverage without extended and time-consuming discovery. Alleging more than is legally required in a petition carries just that sort of risk. See *Thomas v. Farley*, 31 F.3d 557, 558-59 (7th Cir. 1994) (Under traditional notice pleading, "if a plaintiff does plead particulars, and they show that he has no claim, then he is out of luck—he has pleaded himself out of court.").

Rather than filing an answer, the insurance companies moved to dismiss the petition for failing to state a claim upon which relief could be granted, as provided in K.S.A. 60-212(b)(6). Both sides thoroughly briefed the issues in the district court. We apply Kansas procedural rules in considering the motion to dismiss, notwithstanding the contractual choice-of-law clause. *ARY Jewelers v. Krigel*, 277 Kan. 464, 472, 85 P.3d

1151 (2004). In considering a motion to dismiss, the district court must credit the factual allegations in the petition and give the plaintiff the benefit of all reasonable inferences that might be drawn from those allegations. A motion to dismiss should be granted only if the plaintiff could not prevail on any legal theory or claim. *Steckline Communications, Inc. v. Journal Broadcast Group of KS, Inc.*, 305 Kan. 761, 767-68, 388 P.3d 84 (2017); *Rector v. Tatham*, 287 Kan. 230, Syl. ¶ 1, 196 P.3d 364 (2008) (dismissal for failure to state claim proper if factual allegations of petition fail to establish any theory of recovery). We apply the same standard and review the district court's dismissal without deference because the ruling involves neither credibility determinations nor the resolution of other conflicting evidence. See *Cohen v. Battaglia*, 296 Kan. 542, 545-46, 293 P.3d 752 (2013).

In its written ruling, the district court found that the claims did not entail "direct physical loss or damage" to the covered properties and, therefore, were outside the insured risks under the policy language. Alternatively, the district court found that several policy exclusions limiting coverage for various physical losses or damages would preclude coverage. The district court considered CVR Energy's request for a declaratory judgment to be legally redundant of its breach of contract claim.

We affirm the district court on what appears to us to be the narrowest possible ground. We do so in large part because we must apply the substantive law of Texas governing insurance coverage issues. And, to say the least, the pandemic presents an unusual backdrop shaping the issues in this case. While we do not doubt our collective wherewithal to resolve challenging legal questions whatever the source of the controlling principles, we also see no reason for judicial swashbuckling in construing another state's law.

In pressing the argument for direct physical damage to its facilities, CVR Energy, for example, submits surfaces of the refinery were damaged because the COVID-19 virus

4

attached to them, turning them into fomites. CVR Energy poses a more esoteric argument about its proprietary interest in the air within the refinery and whether the air was damaged by the virus. The insurance companies assure us that in the vast run of cases across the country, courts have consistently rejected those kinds of arguments in considering COVID-19 claims under all-risk policies. That may very well be true. But confirming the assertion would require surveying a broad array of cases, the insurance law of various states, and the language of many policies. And we would then have to determine how all of that should be weighed in applying Texas law. But we need not undertake the exercise, and expedience favors another path. So we assume without deciding that CVR Energy's petition outlines a "direct physical loss or damage" under the policies. But various policy endorsements limit or exclude coverage for some losses or damages that otherwise would appear to be compensable.

Under Texas law, exclusions to coverage in an insurance policy are strictly construed against the insurer. *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 668 (Tex. 2008); see also *Ohio Casualty Insurance Co. v. Patterson-UTI Energy, Inc.*, 656 S.W.3d 729, 734 (Tex. App. 2022). With that stringent standard in mind, we consider the exclusion identified as Endorsement No. 10 in the Allianz policy applicable to seepage, pollution, and contamination. The district court identified the endorsement as one that would support the insurance companies' denial of CVR Energy's claims and cited it as an alternative ground for granting the motion to dismiss.

The endorsement's general language excludes any loss or damage resulting from seepage, pollution, or contamination. But an exception to that exclusion restores limited coverage if the conditions result from a "listed peril" identified as "fire, explosion, lightening, windstorm or hail, flood, earth movement, aircraft, vehicles, riot and/or civil commotion, smoke, collapse, vandalism or malicious mischief and mechanical or electrical breakdown." The restoration clause does not apply here.

5

The endorsement treats "'any kind of Seepage or any kind of Pollution and/or Contamination'" as a defined term that includes but is not limited to:

> "[S]eepage of, or pollution and/or contamination by, anything, including, but not limited to, any material designated as a 'hazardous substance' by the United States Environmental Protection Agency or as a 'hazardous material' by the United States Department of Transportation, or defined as a 'toxic substance' by the Canadian Environmental Protection Act for the purposes of part II of that Act, or any substance designated or defined as toxic, dangerous, hazardous or deleterious to persons or the environment under any other law, ordinance or regulation; and the presence, existence, or release of anything which endangers or threatens to endanger the health, safety or welfare of persons or the environment."

Neither CVR Energy nor the insurance carriers have directed us to caselaw construing a comparable endorsement and exclusion.

The definition combines two broad categories of contaminants. The first includes materials designated as hazardous substances, hazardous materials, or toxic substances by federal regulatory agencies in the United States or Canada or similar materials so identified in other legislative or administrative measures. That category is set out in the initial part of the definition preceding the semicolon. The insurance companies have not argued that portion of the provision applies. The second category is set forth in the last two lines of the definition after the semicolon and broadly encompasses "anything which endangers . . . the health . . . of persons." The plain meaning of that category includes the COVID-19 virus and, therefore, triggers the exclusion outlined in the endorsement. Our reading of Endorsement No. 10 is sufficient to affirm the district court's entry of judgment for the defendants.

CVR Energy's principal rejoinder invokes the *ejusdem generis* canon of construction. The canon recognizes that a general term appearing at the end of a list of

6

particular objects or things should be construed to refer to like objects or things that have not been specifically identified. The Texas appellate courts have described *ejusdem generis* this way: "The doctrine states that when interpreting general words that follow an enumeration of particular or specific things, the meaning of those general words should be confined to things of the same kind." *Thomas v. State*, 65 S.W.3d 38, 41 (Tex. Crim. App. 2001); see also *Shipp v. State*, 331 S.W.3d 433, 437 & n.21 (Tex. Crim. App. 2011). And that conforms to the customary understanding of the canon. See 2A Sutherland Statutory Construction § 47:17 (7th ed.); 82 C.J.S., Statutes § 421; Scalia & Garner, Reading Law: The Interpretation of Legal Texts, p. 199 (2012) ("The *ejusdem generis* canon applies when a drafter has tacked on a catchall phrase at the end of an enumeration of specifics, as in *dogs, cats, horses, cattle, and other animals*."). *Ejusdem generis* may be used to construe contractual provisions of doubtful meaning. See *TEC Olmos, LLC v. ConocoPhillips Co.*, 555 S.W.3d 176, 185-86 (Tex. App. 2018); 17A Am. Jur. 2d Contracts § 357 (2024).

CVR Energy's argument falters in its premise—the canon does not apply to what are divisible parts of the definition. They do not compose a serial listing of specifics with a concluding catchall; they are, rather, distinct descriptions of two types of contaminants excluded from coverage. The division using "and" with the semicolon makes that clear. Likewise, the two are not parallel legal or linguistic constructions. The first category identifies contaminants based on how government agencies label them. The second depends on how a contaminant may affect human beings without regard to any institutional labeling. So the second category stands independent of the first and does not depend upon the first for context or meaning.

As a secondary argument, CVR Energy says there are standard exclusion clauses used in the insurance industry that explicitly identify viruses and other vectors. The company thus contends the absence of that sort of express language means Endorsement No. 10 does not pertain to COVID-19 or other viruses. But the argument would turn

insurance policies and their scope coverage into a game of magic words. Here, the insurance companies did not need to use one of the "standard" exclusions because the sweeping definition in the endorsement necessarily includes viruses. Not to put too fine a point on it, a virus is "anything," and a virus injurious to humans would be an excluded contaminant.

Finally, CVR Energy poses two procedural grounds for reversal. First, the company argues its request for declaratory judgment should survive even if the breach of contract claim does not. CVR Energy says the two should be dealt with separately because the declaratory judgment addresses future claims and damages whereas the breach of contract claim rests on the denial of past claims for damages. The argument is, however, reductive. Any claims—past or future—must be grounded in coverage provided in the insurance policies. And the language in Endorsement No. 10 excludes coverage even if the COVID-19 virus has inflicted or will inflict physical loss or damage to CVR Energy's buildings—a proposition that itself is, at best, debatable.

CVR Energy also argues that the district court should have allowed the company to amend its petition rather than entering a dismissal with prejudice on the merits. Typically, a district court should afford a plaintiff a reasonable opportunity to amend its petition before dismissing an action with prejudice under K.S.A. 60-212(b)(6). But a district court need not do so if an insurmountable legal bar precludes any claim or an amendment would otherwise be futile. See *Johnson v. Board of Pratt County Comm'rs*, 259 Kan. 305, Syl. ¶ 15, 913 P.2d 119 (1996); *Dutoit v. Board of Johnson County Comm'rs*, 233 Kan. 995, 1002-03, 667 P.2d 879 (1983).

Here, CVR Energy exhaustively laid out in its petition the relevant factual allegations as it saw them. In its reply brief, the company states, "[T]he [p]etition paints a highly detailed picture of how exactly the [COVID-19] virus permeated its facilities, causing damages to both surfaces and the air, interrupting CVR's business, and causing

8

millions of dollars in losses." Accordingly, we are adrift in discerning what additional factual assertions would depict a colorable claim, and CVR Energy doesn't offer any examples or explanation to that end. Rather, CVR Energy suggests there are disputed facts and ambiguous policy provisions at issue. But if that were correct, then we should reverse and remand for further substantive proceedings on what is already in the petition rather than for CVR Energy to replead in an effort to state a claim.

We conclude the district court properly granted the motion to dismiss under K.S.A. 60-212(b)(6) and entered judgment on the merits for the defendants. The exclusions in Endorsement No. 10 are legally sufficient to support the district court's decision.

Affirmed.