259 P.3d 725 (2011)
Victor W. BARNES and Nancy Barnes, Appellants,
v.
BOARD OF COUNTY COMMISSIONERS OF COWLEY COUNTY, Appellee.
No. 99,609.
Supreme Court of Kansas.
September 2, 2011.
*727 Christopher A. Rogers, of Rogers & Lanning, of Winfield, argued the cause and was on the briefs for appellants.
Edward L. Keeley, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, argued the cause and was on the briefs for appellee.
*728 The opinion of the court was delivered by BILES, J.:
This is an appeal from a special tax assessment the Cowley County Board of County Commissioners levied against real property for cleanup costs the County claims it incurred while removing dangerous structures and unsightly conditions on that property. The property owners challenge the assessment, but both lower courts found subject matter jurisdiction lacking and dismissed the litigation. The legal issue turns on whether the claims may be brought on direct review under K.S.A. 60-907(a), which provides injunctive relief against an illegal levy or enforcement of any tax, charge, or assessment.
To answer this question, we must determine whether K.S.A. 60-907(a) or K.S.A. 19-223 governs jurisdiction as to some or all of the allegations made. The analysis required is a multi-step process because K.S.A. 19-223 controls if the Board action at issue was taken in a judicial or quasi-judicial capacity, while K.S.A. 60-907(a) is applicable only to Board action taken in an administrative or legislative capacity. The first step is to determine whether any claims are controlled by K.S.A. 19-223. If so, those claims were properly dismissed. But as to any remaining claims, our inquiry does not end and additional steps in the analysis are required because K.S.A. 60-907(a) applies only if the nature of a claim is judicial. Admittedly, sifting through the various allegations made in this case to first determine the character of the Board action challenged before then exploring the nature of an individual claim can be confounding, especially since our case law uses similar terminology in different contexts and with different emphasis. But in the end, we determine jurisdiction exists for some of the claims made in this case. We remand to the Court of Appeals to consider whether the district court properly granted summary judgment as to those remaining claims.

Factual and Procedural Background
Victor and Nancy Barnes (property owners) own but do not reside on approximately 14 acres of land in Cowley County, Kansas. In August 2005, five county residents petitioned the Board, alleging the land contained structures unfit for human use and presented a nuisance because the structures were falling in, the land was overgrown with tall weeds, and old cars were parked around the buildings. This complaint was filed pursuant to Cowley County Resolution 2005-01, which the Board adopted to identify and clean up unsafe structures and unsightly conditions on County properties.
In December 2005, Jim McGuire, a Cowley County Health Department Environmental Technician, visited the property owners' land to conduct a preliminary investigation into the allegations as a procedural step pursuant to Resolution 2005-01. McGuire agreed the land contained dangerous structures, an open basement unfit for human use or habitation, and miscellaneous debris creating a nuisance. On December 22, McGuire mailed the property owners a formal complaint describing the property's condition and giving notice of a January 17, 2006, hearing. The complaint also advised the property owners that they could file an answer or appear in person to present evidence to refute the claims, but they did neither. The property owners were temporarily living out of state and claim they called McGuire before the hearing to advise him they would return to Kansas in March or April.
At the January hearing, the Board found the property did not comply with standards established in Resolution No. 2005-01 because of the unsafe structures; open basement; inoperable and unsightly parked vehicles; abandoned tires, appliances, and barrels; overgrown vegetation; and miscellaneous debris. The Board adopted a written order, dated January 17, 2006, stating the property owners must "commence" within 30 days:
"(1) to either repair, alter, clean-up or improve structures to render the structure fit for human use or habitation; to vacate and close the structure until conformance with thee [sic] regulations are met; or to remove or demolish such structure; [and]
"(2) to abate or remove the accumulation of materials creating a nuisance on the property...."
*729 The order further notified the property owners that failure to "commence within the time stated" or "diligently prosecute the same until the work is completed" would carry consequences, stating:
"[T]he Board of County Commissioners does hereby authorize and direct county staff to undertake efforts using county personnel or private contractors to bring said property into compliance. Further, the amount of the cost of removal or demolition of a structure or the removal or abatement of accumulation of materials creating a nuisance on a lot or parcel of land by the County and the cost of providing notice, including postage, shall be a lien against the real property upon which such cost was incurred and such lien, including as part thereof allowance of all costs and necessary attorney fees, may be foreclosed in judicial proceedings in the manner provided or authorized by law for loans secured by liens on real property, or shall be assessed as a special assessment against the lot or parcel of land on which the structure or the accumulation of materials creating a nuisance was located, and the County Clerk shall at the time of certifying other taxes, certify the unpaid portion of the aforesaid costs and shall extend the same on the tax rolls of the County against said lot or parcel of land."
According to Victor Barnes, he received the order sometime in early February and told McGuire he would hire someone to address the Board's concerns when he returned to Kansas in early April. He claims McGuire told him the County would not take any remedial action as long as cleanup work was progressing.
On March 14, 2006, the county counselor sent the property owners a letter stating that they had 21 days to comply with the Board's order or the County would complete the work. The letter further indicated that "[t]hese costs will be billed to you, the property owners, and if not paid then they will be assessed to the real estate ... as a special assessment."
The property owners returned to Kansas in early April and hired a contractor, Jacob Henderson. They claim Henderson was to raze the three buildings on the property, fill in the house's basement and a water well, remove dead trees and broken limbs, and dispose of some old appliances. In an affidavit later filed as part of the court proceedings, Henderson estimated the entire cleanup would cost $5,000. The property owners paid Henderson a $1,800 deposit. Henderson claims he spent more than 58 hours razing the barn and shed, tearing down the old brick house and piling the brick for salvage, filling the basement and the water well, disposing of tires and appliances, and cleaning up limbs and dead trees. But Henderson was unable to complete the project because of heavy rains and personal illness. Henderson claims he returned to the property to complete the work, but Cowley County equipment was already there and the county counselor instructed him over the phone not to finish the project.
From May 30 to June 5, 2006, Cowley County employees performed their own cleanup. An affidavit by the county engineer indicates the county crew performed the following work: (1) removed the porch, a 3-foot brick wall and debris, and filled in the basement; (2) removed a shed; (3) broke the top and sides of two cisterns and filled them with top soil; (4) removed the foundation and chimney base of the barn; (5) removed a pickup topper filled with canned beans and corn; (6) removed 194 tires and some sapling trees that had grown around them; (7) removed numerous metal barrels, parts of appliances, tin and wooden junk, fencing, barbed wire, and other debris, which required the removal of some sapling trees; and (8) mowed the high weeds and brush. The County billed the property owners $11,740.75 for this work. The parties agree that when the bill was not paid, this amount was "placed on [the property owners'] tax statement and charged as an assessment, tax, or charge and instituted a lien against [the] real property."
On March 27, 2007, the property owners sued the County. The petition sought an injunction pursuant to K.S.A. 60-907 to prevent the Board from enforcing the tax lien or attempting to collect the amount billed. The petition does not clearly identify the statutes *730 or County activities at issue. But, highly summarized, the property owners claimed: (1) the County acted without statutory authority when it completed the work and levied the claimed costs against the property; (2) Resolution 2005-01 was void and unenforceable because it contradicted Kansas nuisance abatement statutes; and (3) the County violated the property owners' due process and equal protection rights.
The County moved to dismiss the lawsuit, arguing the district court lacked subject matter jurisdiction. It claimed the property owners were required to appeal the County's actions under K.S.A. 19-223 within 30 days of the Board's January 2006 cleanup order. The County argued this statute was the exclusive method by which a district court may review judicial or quasi-judicial board actions, and the failure to comply with the statute deprived the district court of jurisdiction. As an alternative argument, the County contended the property owners failed to state a claim because Resolution 2005-01 was not illegal or unconstitutional. The property owners responded and moved for judgment on the pleadings.
The district court construed the parties' pleadings as cross-motions for summary judgment. It held it lacked subject matter jurisdiction over the property owners' claims because there was no appeal within 30 days of the Board's January 2006 cleanup order, which the court found was required by K. S.A. 19-223. But despite finding it lacked jurisdiction, the district court went on to reach the merits of the claims by granting the County's summary judgment motion and denying the property owners' motion. The property owners appealed all adverse district court rulings.
The Court of Appeals affirmed the district court's finding that it lacked jurisdiction. It interpreted the property owners' claims as "an attack on the County's decision that their property did not comply with the newly adopted resolution." Barnes v. Board of Cowley County Comm'rs, No. 99,609, 2009 WL 929117, at *1 (Kan.App.2009) (unpublished opinion). The property owners petitioned this court for review, which we granted solely to determine whether the Court of Appeals erred in finding no subject matter jurisdiction. See Supreme Court Rule 8.03(g)(1) (2010 Kan. Ct. R. Annot. 68). This court has jurisdiction under K.S.A. 20-3018(b) (review of Court of Appeals' decision).

ANALYSIS
The sole issue is whether the district court had subject matter jurisdiction over the property owners' claims. Whether jurisdiction exists is a question of law subject to unlimited review. Harsch v. Miller, 288 Kan. 280, 286, 200 P.3d 467 (2009).
Courts have no inherent appellate jurisdiction over official acts of administrative officials or boards, unless there is a statute providing for judicial review. Absent such a statutory provision, appellate review of administrative decisions is limited to claims of relief from illegal, fraudulent, or oppressive official conduct through the equitable remedies of quo warranto, mandamus, or injunction. Umbehr v. Board of Wabaunsee County Comm'rs, 252 Kan. 30, 38, 843 P.2d 176 (1992). The right to appeal an administrative decision is not vested or constitutional; it is statutory and may be limited or completely abolished by the legislature. The property owners do not seek review through the court's equitable powers.
Instead, the property owners argue K.S.A. 60-907(a), which provides injunctive relief from an illegal tax, gave the lower courts jurisdiction. In contrast, the County argues K.S.A. 19-223, which governs appeals from decisions of boards of county commissioners, controls. The district court and Court of Appeals agreed with the County and held K.S.A. 19-223 most applicable. They held further that the property owners failed to comply with the statute's prerequisite provisions by not appealing the Board's January 2006 cleanup order within 30 days. This failure, both courts reasoned, statutorily deprived them of jurisdiction.
But K.S.A. 19-223 applies only if the challenged county action is judicial or quasi-judicial in nature. Dutoit v. Board of Johnson County Comm'rs, 233 Kan. 995, 998-99, 667 P.2d 879 (1983) (K.S.A. 19-223 is exclusive *731 method to review a judicial or quasi-judicial decision by a board of county commissioners; statute inapplicable to appeals from legislative-type decision); see also Larson v. Ruskowitz, 252 Kan. 963, 965-66, 850 P.2d 253 (1993) (statute inapplicable when board of county commissioners acts in an administrative capacity to approve an employee reorganization plan and declines later to modify that plan).

Is K.S.A. 19-223 the statute governing jurisdiction over these claims?
Public agencies and boards exercise legislative, administrative, judicial, and quasi-judicial powers. Umbehr, 252 Kan. at 33, 843 P.2d 176. And it is well established that K.S.A. 19-223 is the exclusive means to review Board conduct that is judicial or quasi-judicial in nature. Dutoit, 233 Kan. at 998-99, 667 P.2d 879. K.S.A. 19-223 states:
"Any person who shall be aggrieved by any decision of the board of commissioners may appeal from the decision of such board to the district court of the same county, by causing a written notice of such appeal to be served on the clerk of such board within thirty days after the making of such decision, and executing a bond to such county with sufficient security, to be approved by the clerk of said board, conditioned for the faithful prosecution of such appeal, and the payment of all costs that shall be adjudged against the appellant."
The County argues K.S.A. 19-223 applies exclusively to this appeal because the Board was acting in a judicial or quasi-judicial capacity when it entered its order finding the property did not comply with Resolution 2005-01, ordering the property owners to bring the land into compliance, and notifying them the County would complete the work at the owners' expense if they failed to diligently prosecute the order. In contrast, the property owners argue their challenge targets the tax assessment only and not the initial finding that their land did not comply with the resolution. A closer review of the claims supports their contention.
The petition does not ask the district court to reverse the initial cleanup order. Rather, the prayer for relief is for "an order permanently enjoining [the Board] from imposing any charge, assessment, or tax on Plaintiffs or Plaintiffs' real estate; and ... from attempting to collect or enforce the collection of any charge, assessment or tax from Plaintiffs or against any real property owned by Plaintiffs." The property owners' brief to this court makes clear that it "is the levy of an illegal tax upon Plaintiffs' real property and the attempted enforcement thereof which is the basis of Plaintiffs' suit, not the finding that their property did not meet the standards of the resolution." Furthermore, the property owners' actions confirm they did not dispute the County's determination that the land contained unsafe structures and required cleanup. In fact, they hired a contractor and paid him to accomplish that cleanup.
What is at the heart of this dispute is the special tax assessment amount, which is directly impacted by: (1) the county staff's decisions to dismiss the property owners' contractor and complete the work using county resources; (2) the degree of cleanup achieved by county personnel; and (3) the costs the County claims were reasonably incurred to finish the job. All of these county actions came well after 30 days from the date of the initial cleanup order. Therefore, even though we would agree the initial cleanup order is a judicial or quasi-judicial determination made by the Board, that order is distinct from what the Board and county personnel did after the order was issued.
But the County argues this distinction is irrelevant because the special tax assessment stems from the January 2006 order. The County asserts the property owners had to appeal the initial cleanup order within 30 days to preserve the right to challenge any future tax assessment that may (or may not) have followed. How the property owners could anticipate and articulate unreasonable conduct, misconduct, or overcharging by county staff in some future implementation of the initial cleanup order is not explained. And this is an obvious weakness in the County's argument.
But to support its defense, the County directs us to our Court of Appeals' decisions *732 in Kirtdoll v. City of Topeka, No. 95,946, 2007 WL 570293 (2007) (unpublished opinion), rev. denied 284 Kan. 946 (2007), and Dahl v. City of Shawnee, No. 92,144, 2006 WL 851232 (2006) (unpublished opinion). Kirtdoll and Dahl both deal with a plaintiff's failure to exhaust administrative remedies under a different statute, K. S.A. 60-2101(d), which governs appeals from a political subdivision exercising judicial or quasi-judicial functions. We must consider these unpublished decisions in more detail to explain why they differ from the case brought by the property owners here.
In Kirtdoll, an administrative hearing officer found Frank Kirtdoll in violation of two Topeka city ordinances and ordered him to abate a property nuisance within 30 days by removing some abandoned vehicles and other material from his premises. The order authorized the City to remedy the problem if Kirtdoll did not comply. He did not appeal that order or clean up the property, so the City secured a district court warrant to enter the premises to seize and dispose of the offending material. Kirtdoll sued the City for damages 2 years later, claiming due process violations, deprivation of property, trespass, and unlawful search and seizure. The City argued Kirtdoll was required to appeal within 30 days of the original abatement order under K.S.A. 60-2101(d), and that the district court lacked jurisdiction because he did not exhaust administrative remedies. The Court of Appeals agreed, holding Kirtdoll was required to appeal within 30 days of the original order pursuant to K. S.A. 60-2101(d) and could not collaterally attack the administrative order through an independent tort action.
In Dahl, a natural disaster damaged the foundation of Bryan Dahl's home. A City of Shawnee inspector determined it was a hazardous condition and ordered Dahl to repair or remove the foundation within 30 days. When Dahl did not comply, the Shawnee City Council passed a resolution setting a hearing for Dahl to show cause why the structure should not be repaired or demolished. At the hearing, the Council adopted a resolution finding the structure unsafe or dangerous. It ordered Dahl to install safety fencing and submit an engineering plan for the foundation's removal. Under that resolution, the City would remedy the conditions if Dahl failed to comply. When Dahl continued to be in noncompliance, the Council held another meeting after giving Dahl notice. At that meeting, the Council found Dahl had not complied with the resolution and accepted a bid to proceed. The City's contractor completed the work. Dahl later sued the City for property damage he alleged occurred during the demolition. The City argued Dahl was required to appeal under K. S.A. 60-2101(d) within 30 days of the initial resolution, and because he did not do so, he failed to exhaust administrative remedies. The Court of Appeals held the initial resolution was the only order necessary for the City to demolish the structure under K.S.A. 12-1755, which allowed the City to raze or remove unsafe structures if the owner failed to "diligently prosecute" the removal or repair, so Dahl had 30 days to appeal. Finally, the Dahl court held his failure to exhaust administrative remedies deprived the court of jurisdiction.
Kirtdoll and Dahl are distinguishable because they are civil actions for monetary damages. They do not involve the levying of disputed cleanup costs as a special tax assessment against property. And it is well established that the assessment of a tax is administrative in nature. See J. Enterprises, Inc. v. Board of Harvey County Comm'rs, 253 Kan. 552, 555-56, 857 P.2d 666 (1993) (jurisdiction depends on the nature of the actual relief sought); Dutoit, 233 Kan. at 999, 667 P.2d 879 (determination of extent of benefit property received from a public improvement for the purpose of calculating special assessment is legislative or administrative in nature); Garvey Grain, Inc. v. MacDonald, 203 Kan. 1, 29, 453 P.2d 59 (1969) (assessment and valuation of property are administrative functions); Harshberger v. Board of County Commissioners, 201 Kan. 592, Syl. ¶ 2, 442 P.2d 5 (1968) (taxation matters are administrative in character); Silven v. Osage County, 76 Kan. 687, 689, 92 P. 604 (1907) (matters of assessment and taxation are administrative, not judicial).
*733 We agree that the Board acted in a quasi-judicial capacity on January 17, 2006, when it investigated and weighed the facts and ultimately determined the property did not comply with Resolution 2005-01 and ordered the cleanup. See Brown v. U.S.D. No. 333, 261 Kan. 134, 155-56, 928 P.2d 57 (1996) (distinguishing quasi-judicial functions from purely administrative or executive functions by whether the function involves the exercise of discretion, requires notice and a hearing, involves the application of legal criteria to specific facts, or carries with it any of the "normal trappings" of a judicial inquiry, such as the presentation of evidence or the presence of counsel). But the character of the County's actions shifted to administrative when the Board assessed the special tax. Cf. Golden v. City of Overland Park, 224 Kan. 591, 597, 584 P.2d 130 (1978) (When the focus of a governing body shifts from legislative policy or executive duty to a zoning determination as to one specific tract of land, the function becomes quasi-judicial in nature.).
Moreover, the decision to levy a tax against the property was not self-executing. Under the Board's January 2006 order, there were two mechanisms available to the County to recover any costs it might incur cleaning up the land. The Board could either begin judicial proceedings to impose a lien on the real property or it could enter a special tax assessment. It chose to levy the special tax assessment at issue here. Accordingly, we find the County was acting in an administrative capacity when the Board decided to levy the tax. Therefore, K.S.A. 19-223 does not control all of the claims in this litigation as the district court and Court of Appeals determined.
We emphasize that our analysis only establishes the character of the County's action, at least in part, as administrative for the purpose of determining jurisdiction; and we are not reaching the merits of the claim that the Board lacked the authority to levy this special tax assessment. We simply hold that K.S.A. 19-223 does not necessarily operate as a jurisdictional bar to all of the arguments made by the property owners. Therefore, we must examine each claim separately to determine whether it actually challenges the special tax assessment and avoids K.S.A. 19-223's jurisdictional bar.

Does each claim avoid the jurisdictional bar?
Admittedly, in some instances, deciphering the nature of the relief sought under each of the property owners' claims is difficult, but it is a necessary exercise. We categorize the claims generally as follows:
(1) The property owners contend the County exceeded its statutory authority in violation of the County Home Rule Act, K.S.A. 19-101 et seq. when the Board enacted the self-help and abatement remedy provisions in Section 6 of Resolution 2005-01. This attacks the Board's ability to levy the tax at issue. It is properly characterized as a challenge to a tax assessment and falls under K.S.A. 60-907(a). This claim is not jurisdictionally barred by K.S.A. 19-223.
(2) The property owners also claim Resolution 2005-01 is void because it prohibits a broader class of conduct than the criminal nuisance statutes, K.S.A. 21-4106 and K.S.A. 21-4107. This argument is two-pronged: (a) The County is only entitled to declare a nuisance for conditions that injure or endanger the public health, and the property owners contend it goes beyond those limitations; and (b) the County exceeded its authority by creating its own procedures to determine whether a nuisance exists. We find the Court of Appeals was correct in its analysis that the nature of relief sought under these arguments is best characterized as a challenge to the Board's January 2006 cleanup order and only tangentially related to the special tax assessment. While a finding that the order was improperly entered would ultimately negate the tax assessment, we agree the property owners were required to bring this claim earlier under K.S.A. 19-223. We find both prongs of this argument barred.
The property owners further claim Resolution 2005-01 is unconstitutionally vague in violation of the United States Constitution's Fifth and Fourteenth Amendment due process requirements because: (a) Sections 5(a) and 5(b) are vague and overbroad *734 when defining what constitutes a nuisance and an unsightly appearance, in violation of their right to due process; and (b) Section 5 is overly vague and gives the County's agent unbridled authority to determine whether a property constitutes a nuisance. Related to this, the property owners also argue Resolution 2005-01 is overbroad because it prohibits the constitutionally protected right to peaceful ownership, use, and enjoyment of property by prohibiting conditions that are neither injurious nor a danger to public health. We find these contentions are also only tangentially related to the special tax assessment and more properly viewed as a challenge to the Board's January 17, 2006, order finding that the property does not comply with Resolution 2005-01. The property owners were required to bring these issues under K.S.A. 19-223 and may not now proceed under K.S.A. 60-907(a).
(4) The property owners further argue Resolution 2005-01 violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because it exempts farmers and those engaged in agricultural pursuits from its provisions. The argument made is that there is no rational basis for treating general landowners differently than farmers. Again, this is not directly related to the special tax assessment. It is better characterized as a challenge to the Board's order finding the land is not in compliance with Resolution 2005-01. As such, it cannot now be raised under K.S.A. 60-907(a).
(5) Finally, the property owners make various arguments that Resolution 2005-01 was unconstitutional as applied to them and that the County's conduct toward them was arbitrary and capricious. They assert the following: (a) They were not given sufficient notice or opportunity to attend the January 17, 2006, hearing; (b) the County's actions conflicted because the county environmental technician assured them by phone the County would not act as long as the cleanup was progressing, but then the county counselor sent a letter shortly thereafter requiring compliance within 21 days; (c) the county employees entered the property and began work despite the progress the property owners made complying with the order; and (d) the County engaged in arbitrary and capricious conduct because the work performed exceeded any legitimate goals of abating dangerous conditions and amounted to beautifying the property. We find the first claim in this series (sufficient notice of the January 2006 hearing) is essentially just another attack on the Board's order and needed to be raised under K.S.A. 19-223. It is subject to the jurisdictional bar. But the remaining claims are sufficiently tailored to challenge the special tax assessment and survive a jurisdictional attack. These latter claims go to the County's decision to initiate its own cleanup efforts and the degree of work performed, which was ultimately determinative of the amount the County billed. Those may properly be seen as claims under K.S.A. 60-907(a).
In summary, this analysis leads us to the conclusion that only some of the property owners' claims appropriately targeted the special tax assessment under K.S.A. 60-907(a). The Court of Appeals correctly found K.S.A. 19-223 bars review of the claims noted above but erred by finding all claims were barred. Our remaining question is whether the property owners were required to exhaust administrative remedies before filing their surviving claims in the district court.

Were the property owners required to exhaust administrative remedies?
K.S.A. 60-907(a) states: "[I]njunctive relief may be granted to enjoin the illegal levy of any tax, charge, or assessment, the collection thereof, or any proceeding to enforce the same." K.S.A. 60-907(a) has long been held to allow review of an administrative action taken
"without statutory authority or contrary to statutory authority or to action taken by an administrative official or board which is permeated with fraud, corruption or conduct so oppressive, arbitrary or capricious as to amount to fraud in connection with the levy of a tax, charge or assessment." Mobil Oil Corporation v. Reynolds, 202 Kan. 179, Syl. ¶ 1, 446 P.2d 715 (1968).
*735 Historically, Kansas courts only considered whether a petitioner alleged that the levy, charge, or assessment occurred under these circumstances when asked to determine whether jurisdiction exists under K.S.A. 60-907(a). See Blevins v. Board of Douglas County Comm'rs, 251 Kan. 374, 382, 834 P.2d 1344 (1992); Dutoit, 233 Kan. at 999, 667 P.2d 879; Mobil Oil Corporation v. McHenry, 200 Kan. 211, 234, 436 P.2d 982 (1968). But this court's J. Enterprises decision altered the analysis to include recognition that most tax claims must be determined first by the Board of Tax Appeals (BOTA) (now the Court of Tax Appeals) under the doctrine of administrative remedies. Therefore, to establish jurisdiction under K.S.A. 60-907(a), a plaintiff must not only allege an illegal tax as defined by those earlier cases, but must also make certain the alleged illegality is not administrative in nature because that would require exhaustion of administrative remedies before allowing court review. 253 Kan. at 555, 857 P.2d 666.
In J. Enterprises, Harvey County assessed additional property taxes and a penalty after determining the taxpayers improperly excluded some "rent-to-own" property from their ad valorem personal property tax renditions. The taxpayers filed an action for declaratory and injunctive relief in the district court pursuant to K.S.A. 60-907(a), challenging the assessments. The district court granted an injunction after finding the rent-to-own property was exempt inventory under K.S.A. 1992 Supp. 79-201m. The County appealed. On its own motion, this court asked whether jurisdiction existed in light of its recent holding in another tax case that stated:
"In the realm of taxes, matters of assessment, exemption, equalization, and valuation are administrative in character. [Citation omitted.] Under Kansas law, it would be unwarranted for a court to entertain a tax suit on any of these matters of administrative expertise where administrative remedies had not been pursued." Dean v. State, 250 Kan. 417, 421, 826 P.2d 1372, cert. denied 504 U.S. 973, 112 S.Ct. 2941, 119 L.Ed.2d 566 (1992).
After reviewing the existing statutory and regulatory scheme governing taxes, which appointed BOTA as the "paramount taxing authority" in the state, the J. Enterprises court held that the doctrine of exhaustion of administrative remedies applied to claims raised under K.S.A. 60-907(a). This meant that a claim for injunctive tax relief could only be filed directly with the district court if the plaintiff's claims were judicial in character. If the plaintiff's claims were administrative in nature, they must be filed with BOTA. We said this distinction maintained the proper relationship between the courts and administrative agencies. J. Enterprises, 253 Kan. at 555, 857 P.2d 666.
The J. Enterprises court reconciled the exhaustion of remedies analysis with the previous K.S.A. 60-907(a) cases by finding that a claim was judicial in nature if the plaintiff alleged an official or board acted without authority or if their actions were permeated with fraud, corruption, or conduct so oppressive, arbitrary, or capricious as to amount to fraud. 253 Kan. at 559, 857 P.2d 666. When determining whether a claim is administrative or judicial, the J. Enterprises court held jurisdiction under K.S.A. 60-907(a) depends on the "nature of the actual relief sought." 253 Kan. at 555-56, 857 P.2d 666. Otherwise, a plaintiff could bypass administrative review in nearly all cases simply by alleging the tax was "illegal." 253 Kan. at 556, 857 P.2d 666.
Applying these rules to the facts in that case, the J. Enterprises court looked beyond the plaintiffs' facial claim that an illegal tax was imposed and emphasized that none of the parties challenged the validity of the tax exemption statute. Instead, the question before the court was whether the County erroneously interpreted that statute. It then held that the plaintiffs' claim was not judicial in nature because the plaintiffs did not assert the County had acted without authority, or that the action was arbitrary, oppressive, or capricious. Instead, the claim was administrative in nature because it involved whether an exemption applied, which required statutory interpretation. 253 Kan. at 560, 857 P.2d 666. As such, jurisdiction did not arise under K.S.A. 60-907(a), and the case was *736 dismissed for failure to exhaust administrative remedies.
It is also important to note there is a distinction between the K.S.A. 19-223 analysis and the K.S.A. 60-907(a) analysis when it comes to the use of terms. Under a K.S.A. 19-223 analysis, the terms "judicial," "administrative," and "legislative" describe the nature of the governmental conduct, which in this case is the action by the Board. Dutoit, 233 Kan. at 998-99, 667 P.2d 879 (K.S.A. 19-223 "affords jurisdiction when a board of county commissioners has engaged in judicial or quasi-judicial action."). In a K.S.A. 60-907(a) analysis, the terms "judicial" and "administrative" refer to the nature of the plaintiff's claims. Admittedly, the use of the same terms in our caselaw is confusing and imposes a more thoughtful consideration when determining whether K.S.A. 60-907(a) applies.
Accordingly, we must determine whether the nature of the property owners' surviving claims as outlined above is judicial or administrative in character. To establish jurisdiction under K.S.A. 60-907(a), a claim must allege the County either acted without authority or that its actions were so arbitrary, oppressive, or capricious that they amounted to fraud. See J. Enterprises, 253 Kan. at 559, 857 P.2d 666. The property owners' claims that survived the jurisdictional bar of K.S.A. 19-223 as discussed above must be individually examined to determine if any pass muster under J. Enterprises.
The claim that the Board exceeded its statutory authority in violation of the County Home Rule Act, K.S.A. 19-101 et seq., when it enacted the self-help and abatement remedy provisions in Section 6 of Resolution 2005-01 is clearly judicial in nature because the property owners allege the Board acted without authority. And unlike the claim in J. Enterprises involving a Board's interpretation of a tax exemption statute, the property owners' claim here pertains to whether the County had authority to act as it did by adopting Section 6 of Resolution 2005-01 under the County Home Rule statute. This requires judicial analysis of K.S.A. 19-101d to determine the constitutionality of the Board's resolution and actions.
The other claims stemming from the remaining miscellaneous attacks essentially allege two wrongs because the property owners argue Resolution 2005-01 was unconstitutional as applied to them and that the County's conduct was arbitrary and capricious. These are the claims alleging the county environmental technician assured them the County would not initiate its own cleanup as long as work was progressing, shortly before they received a letter from the county counselor requiring compliance within 21 days; and the County's decision to enter the property and begin work despite the progress the property owners had made to comply with the order. Additionally, the property owners claim the County engaged in arbitrary and capricious conduct because the work performed exceeded any legitimate goals of abating dangerous conditions and the County acted arbitrarily by beautifying the property. And even though the property owners' claims could have been much better articulated, the nature of their claims clearly assert that the County acted without any authority and/or the County's actions were permeated with conduct so arbitrary and capricious that it amounted to fraud. We find these claims are judicial in nature and could be filed directly with the district court pursuant to K.S.A. 60-907(a).
In summary, we hold the property owners satisfied the jurisdictional burdens under K.S.A. 60-907(a) on the following issues: (1) the County exceeded its statutory authority in violation of the County Home Rule Act when the Board enacted the Resolution's self-help and abatement remedy provisions; and (2) Resolution 2005-01 was unconstitutional as applied, and the County engaged in arbitrary and capricious conduct as noted above.
Normally, our holding would require remand to the district court to determine the merits of the surviving claims, but the district court went beyond the jurisdiction question and found for the County on the merits. The property owners appealed both decisions to the Court of Appeals, but that court stopped short of considering the merits of any claims when it found the entire case was jurisdictionally barred by K.S.A. 19-223. *737 Since we have found that the Court of Appeals erred in part in its jurisdictional ruling, we remand to the Court of Appeals to determine whether the district court erred on the merits as it relates to the surviving issues we have identified. The Court of Appeals must determine whether the district court properly granted summary judgment on those claims that were not jurisdictionally barred.
The decision of the Court of Appeals is affirmed in part, reversed in part, and remanded with directions.
JAMES A. PATTON, District Judge, assigned.[1]
NOTES
[1] REPORTER'S NOTE: Pursuant to the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution, Judge Patton was appointed to hear case No. 99,609 to fill the vacancy on the court created by the retirement of Chief Justice Robert E. Davis.