274 P.3d 697 (2012)
47 Kan. App. 2d 353
Victor W. BARNES and Nancy Barnes, Appellants,
v.
BOARD OF COUNTY COMMISSIONERS OF COWLEY COUNTY, Appellee.
No. 99,609.
Court of Appeals of Kansas.
April 20, 2012.
Christopher A. Rogers, of Rogers & Lanning, of Winfield, for appellants.
*698 Edward L. Keeley, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A. of Wichita, for appellee.
Before MALONE, P.J., GREEN and BUSER, JJ.
MALONE, J.
Victor and Nancy Barnes appeal the district court's judgment in favor of the Board of County Commissioners of Cowley County (Board). The Barnes own real property in Cowley County and they allegedly failed to comply with Cowley County Resolution 2005-01 (the Resolution) regarding abatement of a nuisance on the property. County employees ultimately cleaned up the property and billed the Barnes for the costs pursuant to the procedures set forth in the Resolution. The Barnes refused to pay the bill, and the costs were levied as a tax lien against the property, also pursuant to the Resolution. The Barnes claim the Board had no statutory authority to take these steps in order to enforce the Resolution. This case examines the statutory methods available to a county government in order to enforce resolutions passed under the County Home Rule Act. Because we conclude that the Board exceeded its statutory authority by enacting the Resolution's self-help and abatement remedy provisions, we reverse the district court's judgment in favor of the Board.
We will set forth the facts in greater detail. The Barnes own 14 acres of vacant land in rural Cowley County which had been used by their son, Greg Barnes, as a course for paintball players. In 2005, the Barnes moved to Pennsylvania to commence a 1-year mission with their church. Also in 2005, Greg Barnes was deployed to Iraq as a member of the Kansas National Guard leaving no family member to oversee the property. In August 2005, five Cowley County residents filed a petition with the Board, pursuant to the Resolution, alleging that the land presented a nuisance. Jim McGuire, a county environmental technician, inspected the land and agreed that it contained dangerous structures, an open basement, and miscellaneous debris that created a nuisance. McGuire mailed a formal complaint to the Barnes informing them that they could either file an answer or appear in person at a hearing before the Board, but the Barnes did neither.
At the hearing, the Board found that the property did not comply with the Resolution and issued a written order, dated January 17, 2006, which stated that the Barnes must "commence" within 30 days:
"(1) to either repair, alter, clean-up or improve structures to render the structure fit for human use or habitation; to vacate and close the structure until conformance with thee [sic] regulations are met; or to remove or demolish such structure; [and]
"(2) to abate or remove the accumulation of materials creating a nuisance on the property. . . ."
The written order further notified the Barnes that failure to "commence [clean-up] within the time stated" or "diligently prosecute the same until the work is completed" would carry consequences, stating:
"[T]he Board of County Commissioners does hereby authorize and direct county staff to undertake efforts using county personnel or private contractors to bring said property into compliance. Further, the amount of the cost of removal or demolition of a structure or the removal or abatement of accumulation of materials creating a nuisance on a lot or parcel of land by the County and the cost of providing notice, including postage, shall be a lien against the real property upon which such cost was incurred and such lien, including as part thereof allowance of all costs and necessary attorney fees, may be foreclosed in judicial proceedings in the manner provided or authorized by law for loans secured by liens on real property, or shall be assessed as a special assessment against the lot or parcel of land on which the structure or the accumulation of materials creating a nuisance was located, and the County Clerk shall at the time of certifying other taxes, certify the unpaid portion of the aforesaid costs and shall extend the same on the tax rolls of the County against said lot or parcel of land."
Victor Barnes claimed that he received the written order in early February 2006 and *699 subsequently informed McGuire that he would hire someone to perform the cleanup when he returned to Kansas in early April. Victor also claimed that McGuire told him the Board would not take any remedial action as long as cleanup work was progressing. But on March 14, 2006, William A. Taylor, III, the Cowley County Counselor, sent a letter to the Barnes stating that they must comply with the Board's written order within 21 days or county employees would complete the work and bill the Barnes for the costs. The letter further stated that if the Barnes did not pay the bill, the costs would be levied as a tax lien against the property.
In early April 2006, the Barnes returned to Kansas and hired Jacob Henderson, owner and operator of Ranger Tree Service, to perform the cleanup work. Henderson estimated the entire cleanup would cost $5,000. Henderson obtained a deposit from the Barnes and claimed he spent over 58 hours razing a barn and shed, tearing down an old brick house and piling the bricks, filling a basement and well, disposing of tires and appliances, and cleaning up dead trees and branches. Due to heavy rains and personal illness, Henderson was unable to complete the cleanup. He claimed that when he later returned to the property to complete the cleanup, county employees were already at work on the property and Taylor instructed him by phone not to finish the project.
County employees cleaned up the property from May 30 to June 5, 2006. During that time, the county employees removed a porch, a shed, a 3-foot brick wall, the foundation of the barn, and the chimney base of the barn; filled in a basement and broke and filled in two cisterns; removed a pickup topper filled with canned food; removed 194 tires and trees that had grown around them; removed various debris including metal barrels, fencing, barbed wire, and parts of appliances; and mowed the high weeds and brush. The Board billed the Barnes $11,740.75 for the work and, when the Barnes did not pay the bill, the costs were levied as a tax lien against the property.
On March 27, 2007, the Barnes filed a petition in district court, seeking an injunction to prevent the Board from enforcing the tax lien or otherwise attempting to collect the debt. Highly summarized, the petition claimed: (1) the Board acted without statutory authority when it completed the work and levied the claimed costs against the property; (2) the Resolution was void and unenforceable because it contradicted Kansas nuisance abatement statutes; and (3) the Board violated the Barnes' due process and equal protection rights. The Board responded that the district court did not have subject matter jurisdiction because the Barnes had failed to appeal the Board's actions within 30 days of the January 17, 2006, cleanup order.
On June 12, 2007, the Board filed a motion to dismiss the petition on jurisdictional grounds. Alternatively, the Board argued that the petition failed to state a claim upon which relief could be granted because the Resolution was not illegal or unconstitutional. The Barnes filed a response to the motion to dismiss, and they also filed a motion for judgment on the pleadings. The district court construed both pleadings as cross-motions for summary judgment. On October 15, 2007, the district court filed a memorandum decision in favor of the Board. The district court found that it lacked subject matter jurisdiction because the Barnes had failed to appeal the Board's actions within 30 days of the January 17, 2006, cleanup order. In the alternative, the district court reached the merits of the claims and found that the Board's actions were authorized under the county home rule powers and that the Board did not violate the Barnes's constitutional rights in the manner that the Resolution's nuisance provisions were enforced.
On appeal, this court initially agreed that the district court lacked subject matter jurisdiction and dismissed the appeal without addressing the merits of the claims. Barnes v. Board of Cowley County Comm'rs, No. 99,609, 2009 WL 929117, at *2 (Kan.App.2009) (unpublished opinion), aff'd in part, rev'd in part, and remanded with directions 293 Kan. 11, 259 P.3d 725 (2011). On a petition for review, our Supreme Court examined only the jurisdictional question and determined that the district court had jurisdiction over some but not all of the Barnes' claims. Barnes, 293 Kan. at 21-28, 259 P.3d 725. *700 After an extensive analysis, our Supreme Court determined there were two surviving claims:
"In summary, we hold the property owners satisfied the jurisdictional burdens under K.S.A. 60-907(a) on the following issues: (1) the County exceeded its statutory authority in violation of the County Home Rule Act when the Board enacted the Resolution's self-help and abatement remedy provisions; and (2) Resolution 2005-01 was unconstitutional as applied, and the County engaged in arbitrary and capricious conduct as noted above." 293 Kan. at 28, 259 P.3d 725.
Accordingly, our Supreme Court remanded the case to this court to determine whether the district court erred in its decisions on the merits as to these issues. 293 Kan. at 28, 259 P.3d 725.
We will first address whether the Board exceeded its statutory authority under the County Home Rule Act by enacting the Resolution's self-help and abatement remedy provisions. The Barnes argue that the Board exceeded its statutory authority by enacting the Resolution which authorized the Board to clean up the property and levy a tax lien to recover the costs. The Barnes note that the power of cities and municipalities to utilize self-help to abate nuisances does not vest by their home rule powers, but rather by specific enabling legislation. See K.S.A.2011 Supp. 12-1617e. But as the Barnes point out, there is no corresponding legislation enabling counties to utilize self-help to abate nuisances. The Board replies that it did not exceed its statutory authority by enacting the Resolution or by enforcing it through self-help and abatement procedures.
The Barnes appeal from the district court's denial of their motion for judgment on the pleadings. When, as here, matters outside the pleadings are presented to the district court with a motion for judgment on the pleadings and the district court does not exclude the outside matters, the motion shall be treated as one for summary judgment. See K.S.A. 60-212(c). Where there is no factual dispute, appellate review of an order regarding summary judgment is de novo. Kuxhausen v. Tillman Partners, 291 Kan. 314, 318, 241 P.3d 75 (2010). Moreover, to the extent that this issue involves statutory interpretation, this court exercises unlimited review. Unruh v. Purina Mills, 289 Kan. 1185, 1193, 221 P.3d 1130 (2009).
The County Home Rule Act (Act), K.S.A. 19-101 et seq., empowers a county to perform certain actions, including "to exercise the powers of home rule to determine their local affairs and government authorized under the provisions of K.S.A. 19-101a." K.S.A. 19-101 fifth. The Act authorizes the board of county commissioners for a county to "transact all county business and perform all powers of local legislation and administration it deems appropriate," subject to enumerated restrictions, by resolution of the Board. See K.S.A. 19-101a. K.S.A. 19-101d provides for enforcement of such resolutions, and states, in pertinent part:
"(a)(1) The board of county commissioners of any county shall have the power to enforce all resolutions passed pursuant to county home rule powers, as designated by K.S.A. 19-101c, and amendments thereto. Resolutions may be enforced by enjoining violations, by prescribing penalties for violations by fine, by confinement in the county jail or by both fine and confinement. Unless otherwise provided by the resolution that defines and makes punishable the violation of such resolution, the penalty imposed shall be in accordance with the penalties established by law for conviction of a class C misdemeanor. In no event shall the penalty imposed for the violation of a resolution exceed the penalties established by law for conviction of a class B misdemeanor." (Emphasis added.)
K.S.A. 19-101d(a)(2) provides that prosecution for any violation of a county resolution shall be commenced in the district court in the name of the county. K.S.A. 19-101d(b) provides that the prosecution may be conducted in accordance with the provisions of the code for the enforcement of county codes and resolutions. See K.S.A. 19-4701 et seq.
Under the authority of the Act, the Board passed the Resolution, which stated that it was in the interest of the health, safety, or general welfare of the residents of Cowley *701 County to enact regulations designed to clean up areas of the county that were unfit for human use, constituted a nuisance, or were otherwise a danger to people in Cowley County. Section 6 of the Resolution provided the procedure for enforcement, including initiation of the process; serving a complaint upon the owner, which contains notice of a hearing; timing for the hearing; the owner's right to give testimony; the Board's obligations to issue a written order if it finds the structure is unfit for human use or habitation or finds that a piece of land constitutes a nuisance; and requirements for any subsequent order to repair, alter, clean-up, or otherwise improve the property. Section 6 further stated:
"e. If the owner fails to comply with an order to repair, alter or improve; to vacate and close; or to remove or demolish a structure, the Board may cause such structure to be removed or demolished. If the owner fails to comply with an order to abate or remove the accumulation of materials creating a nuisance on a lot or parcel of land, the Board may cause the same to be removed or abated.
"f. That the amount of the cost of removal or demolition of a structure or the removal or abatement of accumulation of materials creating a nuisance on a lot or parcel of land by the Board and the cost of providing notice, including postage, shall be a lien against the real property upon which such cost was incurred and such lien, including as part thereof allowance of all costs and necessary attorney fees, may be foreclosed in judicial proceedings in the manner provided or authorized by law for loans secured by liens on real property, or shall be assessed as a special assessment against the lot or parcel of land on which the structure or the accumulation of materials creating a nuisance was located, and the County Clerk shall at the time of certifying other taxes, certify the unpaid portion of the aforesaid costs and shall extend the same on the tax rolls of the County against said lot or parcel of land."
On remand, this court is to consider whether the Board exceeded its statutory authority in violation of the Act by enacting the Resolution's self-help and abatement remedy provisions. Barnes, 293 Kan. at 28, 259 P.3d 725. As stated above, K.S.A. 19-101d(a)(1) explicitly provides that: "Resolutions may be enforced by enjoining violations, by prescribing penalties for violations by fine, by confinement in the county jail or by both fine and confinement." (Emphasis added.) The Barnes argue that under the plain language of the statute, when a county resolution is violated, the resolution may be enforced only by enjoining the violation, or by imposing a fine or confinement in jail, or by imposing both a fine and confinement. Conversely, the Board argues that the use of the word "may" in the statute means that the remedies listed are not exclusive and that alternate enforcement mechanisms may be used. See K.S.A. 19-101d(a)(1).
The district court accepted the Board's argument, finding that "injunctive relief and/or criminal prosecutions are not the exclusive ways that home rule resolutions can be enforced. The statute uses the term `may' and not `shall.'" This court must now determine whether K.S.A. 19-101d provides the exclusive remedies for enforcement of county resolutions. If the statute provides the exclusive remedies, the Resolution's remedy provisions exceed the authority of the Act because the only statutorily authorized remedies are injunction, fine, confinement, or both fine and confinement; whereas the Resolution authorizes abatement and subsequent recoupment of costs when a property owner violates the provisions of the Resolution and fails to properly correct the situation.
The parties do not cite any Kansas cases interpreting K.S.A. 19-101d, and our research has found only one case in which a Kansas appellate court has addressed the language of this statute. In that case, our Supreme Court, during a brief overview of the Act, stated: "K.S.A. 19-101d grants the power to a county board to enforce all resolutions passed pursuant to county home rule powers, either by injunction or by prescribing penalties for violations by fines or by confinement in the county jail." Board of Sedgwick County Commr's v. Noone, 235 Kan. 777, 780-81, 682 P.2d 1303 (1984). The court in Noone did not analyze whether the *702 statute provided the exclusive remedies for the enforcement of county resolutions, but we know generally that the legislature intended the Act to be liberally construed. K.S.A. 19-101c provides: "The powers granted counties pursuant to this act shall be referred to as county home rule powers and they shall be liberally construed for the purpose of giving to counties the largest measure of self-government."
Resolution of this issue requires interpretation of K.S.A. 19-101d. The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. Bergstrom v. Spears Manufacturing Co., 289 Kan. 605, 607, 214 P.3d 676 (2009). The first step is to decide whether the legislature's intent may be determined from the statute's plain language, giving ordinary words their ordinary meaning. If the legislature's intent is not clear from the statutory language, a court moves to the second step by applying the canons of construction or examining legislative history. Brennan v. Kansas Insurance Guaranty Ass'n, 293 Kan. 446, 450, 264 P.3d 102 (2011).
Although the legislature intended the Act to be liberally construed, when a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. Double M Constr. v. Kansas Corporation Comm'n, 288 Kan. 268, 271-72, 202 P.3d 7 (2009). Applying the plain language of K.S.A. 19-101d(a)(1), we are not persuaded by the Board's argument that the use of the word "may" rather than "shall" makes the list of remedies set forth in the statute nonexclusive. The word "may" appears to be related to the enforcement, not the methods of doing so; in other words, a county may or may not choose to enforce its resolutions, but if it chooses to enforce them, the methods of doing so are restricted to injunction, fine, confinement in jail, or both fine and confinement. But in the event the legislature's intent is not clear from the statutory language, we will also consider canons of statutory construction and legislative history to interpret the statute's meaning. See Brennan, 293 Kan. at 450, 264 P.3d 102.
When construing statutes to determine legislative intent that is not ascertainable from the plain language, appellate courts may apply the maxim, expressio unius est exclusio alterius, i.e., the inclusion of one thing implies the exclusion of another. Applying this maxim, courts may presume that when the legislature expressly includes specific items in a statutory list, it intends to exclude any items not expressly included in that list. See In re Tax Application of Lietz Constr. Co., 273 Kan. 890, 911, 47 P.3d 1275 (2002).
Here, the legislature expressly provided that resolutions passed under the authority of the Act could be enforced either by enjoining the violation, or by imposing a fine or confinement in jail, or by imposing both a fine and confinement. The fact that the statute contains such a list may be interpreted as showing legislative intent to exclude other methods of enforcement unless the legislature makes clear that the list is nonexclusive. For example, K.S.A.2011 Supp. 72-1397(c) covers restrictions on issuing and renewing teaching licenses and provides that the state board of education "may consider factors including, but not limited to, the following. . . ." (Emphasis added.) But K.S.A. 19-101d(a)(1) includes no such language; thus, there is no clear indication that the legislature meant the list of remedies to be nonexclusive. The legal maxim expressio unius est exclusio alterius supports the Barnes' contention that K.S.A. 19-101d(a)(1) provides the exclusive remedies for the enforcement of county resolutions.
The Barnes' position becomes even more persuasive when considered in light of the legislative history of K.S.A. 19-101d(a)(1). As originally enacted in 1976, the pertinent part of this statute read:
"The board of county commissioners shall have the power to enforce all resolutions passed pursuant to county home rule powers, as designated by K.S.A. 19-101c, by prescribing penalties for violations of such resolutions, either by fine, or by confinement in the county jail, or by both *703 such fine and confinement." (Emphasis added.) L.1976, ch. 149, sec. 1.
Later in the legislative session, the statute was amended to read:
"The board of county commissioners shall have the power to enforce all resolutions passed pursuant to county home rule powers, as designated by K.S.A. 19-101c. Such resolutions may be enforced by enjoining violations thereof or by prescribing penalties for violations of such resolutions, either by fine, or by confinement in the county jail, or by both such fine and confinement." (Emphasis added.) L.1976, ch. 150, sec. 1.
This amendment gives the board of county commissioners the authority to enforce county resolutions by enjoining violations thereof in addition to the options of fine and confinement in jail. When the legislature revises an existing law, the court presumes that the legislature intended to change the law as it existed prior to the amendment. Ft. Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs, 290 Kan. 446, 464, 228 P.3d 403 (2010). Thus, we may presume that the amendment that added the power of injunctive relief was required because the statute originally did not provide the county with that power. If the enforcement methods originally were not limited to fine or confinement in jail, there would have been no need to add authority for injunctive relief. In other words, if the original list of remedies had been nonexclusive, the explicit addition of another remedy would have been unnecessary and the revision would not have changed the law as it existed prior to the amendment.
The Board, on the other hand, points to the legislative history to support its contention that it acted within its statutory authority when it passed the self-help and abatement provisions. As the Board points out, when the county home rule legislation was originally passed in 1974, there were no provisions limiting methods of enforcement of resolutions. See L.1974, ch. 110, secs. 1-6. The limiting provisions were added 2 years later and were codified at K.S.A. 19-101d; see L.1976, ch. 150, sec. 1. The Board's interpretation of this history is that enforcement methods were unlimited at first and, when the enforcement provisions were added, they were intended to restrict home rule enforcement only when criminal sanctions were chosen as the enforcement mechanism. But the 1976 amendments to the statute also included injunctive relief as a method of enforcing county resolutions, and the Board does not explain how the addition of the power of injunction translates to a restriction on enforcement through criminal sanctions. We find the Board's interpretation of the legislative history unpersuasive; instead, we find the legislative history supports the Barnes' contention that the self-help and abatement remedy provisions enacted by the Board exceeded the statutory authority under the Act.
The Board also argues that the Barnes' contention is foreclosed by the Kansas Supreme Court's recent analysis and holding in General Building Contr., LLC v. Board of Shawnee County Comm'rs, 275 Kan. 525, 66 P.3d 873 (2003). In this case, the Board of County Commissioners of Shawnee County, at the request of a local economic development specialist, authorized the county counselor's office to begin eminent domain proceedings to obtain three parcels of land needed to complete an industrial development project in Topeka. Invoking its powers under the Act, Shawnee County filed a petition for eminent domain in the district court to obtain the real property owned by three different landowners. After hearing testimony and argument, the district court found that Shawnee County's eminent domain proceedings were authorized under its home rule powers, when K.S.A. 19-101, K.S.A. 19-301 et seq., and K.S.A. 19-4101 et seq. were considered together.
On appeal, the issue was whether counties have the power of eminent domain where there is no express grant of such power to counties by the legislature. By analogy, the landowners argued that because cities in Kansas have home rule powers but also have a specific statute granting them the power of eminent domain, the court could not assume that "the legislature intended to give counties the power of eminent domain through the county home rule statute alone." 275 Kan. at 533, 66 P.3d 873. Our Supreme Court rejected the landowners' argument and held that *704 the existence of a specific statute giving cities the power of eminent domain does not mean that counties lack such power, even where there are no statutes expressly giving eminent domain powers to counties. See 275 Kan. at 534-36, 66 P.3d 873.
General Building Contr. is distinguishable from the facts herein. In that case, our Supreme Court examined whether a county's use of the power of eminent domain was expressly prohibited or restricted by K.S.A. 19-101a and found that it was not. 275 Kan. at 534, 66 P.3d 873. Thus, the court determined that counties may initiate eminent domain proceedings under their home rule powers. 275 Kan. at 536, 66 P.3d 873. As applied to the facts herein, General Building Contr. supports the idea that counties have the power to regulate nuisances despite the lack of specific statutes granting such power to counties. But K.S.A. 19-101d expressly governs the enforcement of any such nuisance regulations passed by a county under the Act. Our Supreme Court did not address K.S.A. 19-101d in General Building Contr., and the case does not support the Board's argument that the remedies set forth in that statute for the enforcement of county resolutions are nonexclusive.
As the Barnes point out, the power of cities and municipalities to utilize self-help to abate nuisances does not vest by their home rule powers, but rather by specific enabling legislation. See K.S.A.2011 Supp. 12-1617e. But there is no corresponding legislation enabling counties to utilize self-help to abate nuisances. Counties are granted broad authority under their home rule powers to transact county business and govern their local affairs by resolution of the board of county commissioners. K.S.A. 19-101a. However, the only statutory authority for a county to enforce its resolutions is K.S.A. 19-101d. This statute provides no authority for self-help remedies.
In summary, we recognize that the Act "shall be liberally construed for the purpose of giving to counties the largest measure of self-government." K.S.A. 19-101c. There is nothing in K.S.A. 19-101a that prohibits or restricts a county from exercising its home rule powers to regulate nuisances and provide for the health, safety, or general welfare of the county residents. But K.S.A. 19-101d provides the exclusive methods of enforcing county resolutions passed under the Act. The remedies available to the county are restricted to injunction, fine, confinement in jail, or both fine and confinement. The procedures by which Cowley County cleaned up and abated the nuisance on the Barnes' property were not authorized by K.S.A. 19-101d and exceeded the authority granted by the Act. We conclude the district court erred in finding that the procedures were so authorized and in granting summary judgment in favor of the Board. Instead, the district court should have granted the Barnes' motion for judgment on the pleadings on their claim that the Board acted without statutory authority by enacting the Resolution's self-help and abatement remedy provisions. Because this finding is dispositive, we will not address the remaining issue of whether the Resolution was unconstitutional as applied based on the Board's alleged arbitrary and capricious conduct.
Reversed.